F I L E D
United States Court of Appeals
Tenth Circuit

MAY 8 2000

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

In re:

DURABILITY INC.,

Debtor.

_____

SCOTT P. KIRTLEY,

Appellant,

v.

SOVEREIGN LIFE INSURANCE
COMPANY OF CALIFORNIA,

Appellee.

No. 99-5105

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 98-CV-232-B)

Submitted on the briefs:

Marc F. Conley of Marc F. Conley, P.C., and James R. Eagleton of Eagleton,
Eagleton & Harrison, P.C., Tulsa, Oklahoma, for Plaintiff-Appellant.

Terry M. Thomas and Terry J. Tarwater of Crowe & Dunlevy, Tulsa, Oklahoma,
for Defendant-Appellee.

Before **TACHA**, **ANDERSON** and **LUCERO**, Circuit Judges.

**LUCERO**, Circuit Judge.

Scott Kirtley, successor trustee of the estate of Durability, Inc. (Trustee), appeals from the district court's affirmance of summary judgment granted in favor of Sovereign Life Insurance Company of California (Sovereign) by the bankruptcy court on the Trustee's claim that he was entitled to assume a $500,000 "key-man" life insurance policy on Fred I. Palmer, II (Palmer), Durability's former president and sole shareholder. Exercising jurisdiction pursuant to 28 U.S.C. §§ 158(b) and 1291, we address two issues: whether the district court abused its discretion in failing to consider, when resolving the motion for summary judgment, supplemental evidence submitted by the Trustee contradicting an earlier stipulation of fact; and whether the grace period established by 11 U.S.C. § 108(b) extends a statutorily-mandated insurance policy grace period for premium payments. Answering both questions in the affirmative, we reverse. [1]

**I**

_____

[1] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Sovereign issued a $500,000 life insurance policy to Durability in 1984 insuring Palmer's life. Durability purchased the policy from Mark Farquhar, a soliciting agent for Sovereign who also handled Durability's employee benefit, disability, and medical insurance needs through various companies. [2] Sovereign withdrew premiums on the $500,000 life insurance policy from Durability's bank account on a monthly basis pursuant to a preauthorized check procedure whereby Sovereign printed the premium check to itself without further obligations on Durability's part other than maintaining an adequate balance in the account. Premium payments were due by the third of each month. Sovereign wrote the September 3 premium payment check to itself on August 15, 1986, but alleges the check was returned for insufficient funds on August 25 and again on September 8.

In 1986, Durability experienced financial difficulties and Richard Sullivan was appointed as its state-court receiver. Sullivan received and disbursed funds on behalf of Durability from August 15 to October 15, 1986. Farquhar received notice of Sullivan's receivership on September 11, 1986, and testified that between September 15 and 25 he told Sullivan that Durability's life insurance policies on Palmer were term and thus "were in jeopardy of lapsing" if the

---

[2] Sovereign issued another policy for $1,000,000 to Durability on Palmer in 1985. It is uncontroverted that Sovereign paid to the estate the proceeds of that policy. Therefore, only the $500,000 policy is at issue in this case.

premiums were not paid. II Appellant's App. at 432, 458. Farquhar also testified that he had no knowledge in September whether the payments on the $500,000 policy had been timely made.

According to Sovereign, the $500,000 policy lapsed on October 4, 1986, for failure to pay the September premiums or cure the default within the policy's thirty-one day grace period. Durability also failed to pay on time the premium due October 3, 1986. On October 6, 1986, Durability's creditors filed an involuntary petition in bankruptcy court and James Adelman was appointed as trustee. On November 5, 1986, Sovereign sent a mailgram to Durability offering to reinstate and continue the policy without proof of insurability if Durability paid the past-due premiums by November 12, 1986. The record before the bankruptcy court prior to the granting of summary judgment reflects that Adelman became aware that Sovereign claimed the policy had lapsed when he received this mailgram, but that the mailgram was not received "within the time to remit such sums." I Appellant's App. at 39. Adelman delivered a check for the allegedly unpaid premiums to Farquhar's office on November 19, 1986. Sovereign refused to accept the tendered payment.

In 1987, Adelman moved pursuant to 11 U.S.C. § 365(a) to assume the insurance policy as trustee of the Durability estate, arguing that Farquhar, on behalf of Sovereign, told him the policy would not lapse as long as he got the

premium payment to Farquhar's office on November 19, 1986. The motion to assume unreasonably languished in the bankruptcy court for almost eight years. During that time, Kirtley was appointed as successor trustee and Palmer died. In December 1994 Sovereign moved for summary judgment. Together with the motion, it submitted several "stipulated facts": the policy premium "was not received on or before September 3, 1986," I Appellant's App. at 68; "[n]o money was received by Sovereign or any of its agents on or before November 12, 1986," *id.* at 70; and Farquhar made no representation on November 19, 1986, that Sovereign would reinstate the policy, *see id.* at 71. In its proffer of documentary evidence in support of summary judgment, Sovereign presented a copy of the returned check, an undated notice of lapse, and a notice of returned check addressed to Durability dated September 19. In its response and cross-motion for summary judgment, the Trustee agreed that these stipulated facts were not in dispute. Nevertheless, the Trustee argued that Sovereign had waived its argument that the policy lapsed by extending an offer to Durability that it could pay the past-due premiums by November 12 and keep the policy in full force and effect. In February 1995, the Trustee supplemented its response and reply with nine propositions of law and fact. Propositions I, II, V, and VIII rested on the factual assumptions that the September 3 premium had not been paid and that Adelman had not tendered premium payments before November 12.

At the time the summary judgment motions were filed, discovery had not been completed and the Trustee presented no evidence contradicting Sovereign's stipulated fact regarding payment of the September 3 premium. In March 1995, however, the Trustee obtained an affidavit from Sullivan stating that, while acting as receiver from August through October 1986, he was advised to keep all life insurance on Palmer in full force and effect and that, to his knowledge, he never failed to pay any premium. Sullivan also stated that he was never advised that Durability had defaulted on the September premium, and that while he was receiver, he picked up Durability's mail almost every day. The Trustee also discovered that, in his final accounting to the bankruptcy court in November 1986, Sullivan listed as a cash disbursement from Durability a payment on August 28, 1986, to Sovereign for $131.75, the exact amount of the policy premium. Accordingly, the Trustee again supplemented his response to Sovereign's motion for summary judgment, submitting Sullivan's affidavit and the accounting ledgers. Sovereign did not object to amendment of the Trustee's response or submission of this evidence, nor did it counter Sullivan's affidavits with any additional evidence indicating that the past due or lapse notices had actually been mailed or any records showing that the payment had not been received.

The motions for summary judgment remained unresolved in the bankruptcy court for yet another two years. At a 1997 status hearing, the court asked the parties if they had any additional factual or legal matters to present to the court. After the parties informed the court that they had nothing to add, the court took the motions under advisement. In 1998 the court granted summary judgment in favor of Sovereign based on the original stipulated fact that the September premium had not been paid.

The Trustee filed a motion for reconsideration under Federal Rule of Civil Procedure 59(e), arguing that summary judgment was improper because the evidence presented in his amended response created genuine issues of material fact as to payment and timely notice of default. With the motion, he submitted an affidavit from Adelman that, for the first time, also purported to raise a genuine issue regarding whether Mr. Adelman's tender of payment was made on or before November 12. The bankruptcy court refused to consider Adelman's affidavit and denied the motion for reconsideration. [3] Without mentioning Sullivan's affidavit and without citing to authority for his conclusion, the bankruptcy court held that "[h]aving confessed those [stipulated] facts the Trustee can not now dispute the

_____

[3]    On appeal to this court, the Trustee does not challenge the bankruptcy court's refusal to consider Mr. Adelman's post-judgment affidavit.

-7-

same." II Appellant's App. at 638. The Trustee then appealed to the district court, which affirmed.

## II

The only issues before this court are: (1) whether the bankruptcy court properly refused to consider Sullivan's affidavit when ruling on the motion for summary judgment; and (2) whether the bankruptcy properly granted summary judgment. Regarding the former, we review evidentiary rulings made at the summary judgment stage for abuse of discretion. *See Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.*, 131 F.3d 874, 894 (10th Cir. 1997). Regarding the latter, we review the record de novo to determine whether the Trustee presented evidence creating a genuine issue of material fact that would preclude summary judgment. *See Hollytex Carpet Mills, Inc. v. Oklahoma Employment Sec. Comm'n (In re Hollytex Carpet Mills, Inc.)*, 73 F.3d 1516, 1518 (10th Cir. 1996). "When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). "[T]he plaintiff, to survive the defendant's motion [for summary judgment], need only present evidence from which a jury might return a verdict in [its] favor. If [it] does so, there is a genuine issue of

fact that requires a trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## A

The parties have not cited, and we have not found, any cases that discuss the precise issue of whether a court abuses its discretion by refusing to consider, when ruling on a motion for summary judgment, new evidence contradicting an earlier stipulation. Adopting the equitable considerations courts generally apply when enforcing stipulations and the underlying purpose of summary judgment, we conclude the court abused its discretion because the Sullivan affidavit contained material evidence, and there was no showing that the affidavit was a sham or that its consideration would prejudice Sovereign.

Generally, on motions for summary judgment, courts regard stipulations of fact as admissions of the parties that are conclusive without further evidentiary support in the record. *See Stubblefield v. Johnson-Fagg, Inc.*, 379 F.2d 270, 272 (10th Cir. 1967). Adherence to stipulated facts, however, is not categorical.

> Stipulations are entered into in order to dispense with proof over matters not in issue, thereby promoting judicial economy at the convenience of the parties. Courts thus enforce stipulations as a general rule, absent circumstances tending to negate a finding of informed and voluntary assent of a party to the agreement.

*United States v. Montgomery*, 620 F.2d 753, 757 (10th Cir. 1980) (quotation and citations omitted). Accordingly "[t]he court may relieve a party from an

improvident [discovery stipulation] or one that might work injustice."

*Westinghouse Elec. Corp. v. Adams (In re Westinghouse Elec. Corp. Uranium Contracts Litig.)*, 570 F.2d 899, 902 (10th Cir. 1978) (citations omitted).

The stage at which a party requests relief from a stipulation bears heavily on whether the court should grant the relief, and a court must determine whether there are other overriding rules or policy considerations that compel granting or denying such relief. For example, if a party waits until trial to withdraw stipulations submitted in the pretrial order, the recital of facts "may be modified at the trial only to prevent manifest injustice." *United States v Sommers*, 351 F.2d 354, 357 (10th Cir. 1965). That standard comports with Fed. R. Civ. P. 16, which mandates that pretrial orders "shall be modified only to prevent manifest injustice." If, however, the request to withdraw or amend the stipulation is made before significant prejudice to the other parties would result, promotes important equitable and legal considerations, and is not controlled by a rule of procedure, the party seeking to withdraw must simply show good reason for the request. *See Westinghouse Elec. Corp.*, 570 F.2d at 902-03 (holding court abused its discretion in binding party to earlier stipulation because of overriding considerations favoring full disclosure and disposition of litigation on the merits and because party's request was not unreasonable). That more lenient standard, applied in the context of summary judgment, is consistent with the rule that a

party opposing summary judgment may submit an affidavit contradicting a prior sworn statement, provided the affidavit is not an attempt to create a sham issue of fact. *See Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986). More importantly, it accords with the principle that summary judgment should not be employed to deprive litigants "of their right to a full hearing on the merits, if any real issue of fact is tendered." *Atlas Sewing Ctrs., Inc. v. National Ass'n of Indep. Sewing Mach. Dealers*, 260 F.2d 803, 807 (10th Cir. 1958).

Similarly, if a stipulation is before the court in the form of a formal admission pursuant to Rule 36 and has not yet become part of a pretrial order, the court may allow the party to withdraw or amend it "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." Fed. R. Civ. P. 36(b). The court's focus must be on the

> effect upon the litigation and prejudice to the resisting party rather than [] on the moving party's excuses for an erroneous admission. *See* 10A Federal Procedure L.Ed. § 26.500 (1988) ("FRCP 36(b) does not require the moving party to prove excusable neglect.").

*Federal Deposit Ins. Corp. v. Prusia*, 18 F.3d 637, 640 (8th Cir. 1994) (holding that court abused its discretion in refusing to permit party to amend admission because permitting the amendment would have subserved the presentation of the merits and no prejudice was shown) (quotation and other citation omitted).

"[P]reparing a summary judgment motion in reliance upon an erroneous admission does not constitute prejudice." *Id.*; *see also* 8A WRIGHT, MILLER, & MARCUS, FEDERAL PRACTICE & PROCEDURE CIVIL 2D § 2264 (1994) (stating that "in a proper case a party may avoid summary judgment by withdrawing an inadvertent admission"); *cf. Lucas v. Higher Educ. Assistance Found. (In re Lucas)*, 124 B.R. 57, 58 (Bankr. N.D. Ohio 1991) (stating that "courts are particularly responsive to allowing late answers to requests for admission when summary judgment is involved") (citing *St. Regis Paper Co. v. Upgrade Corp.*, 86 F.R.D. 355 (W.D. Mich. 1980)). Also of relevance to this case, we have held that a response to a motion for summary judgment arguing in part that the opposing party should not be held to its admissions can constitute a Rule 36(b) motion to withdraw those admissions. *See Bergemann v. United States*, 820 F.2d 1117, 1120-21 (10th Cir. 1987).[4]

---

[4]    We note that after Sovereign had filed its motion for summary judgment containing the stipulated facts, the Trustee formally responded to Sovereign's requests for admissions and initially admitted that the September 3 payment was not made by that date. The Trustee then amended his response in June 1995 to deny that the premium had not been paid, stating that Sovereign had transferred the payment out of Durability's bank account on August 28, 1986. The Trustee did not, however, formally move for amendment of the admission under Fed. R. Civ. P. 36(b). In any event, the docket sheet indicates that neither the admissions nor the amendment to the admissions were filed with the bankruptcy court, and the parties did not include or refer to them in their motions, responses, or replies as support for their position on summary judgment. More specifically, Sovereign's stipulated fact in its summary judgment motion

(continued...)

Although not a model of legal clarity, the Trustee's second supplemental response alerted the bankruptcy court and Sovereign that it "amend[ed] Propositions I, II, V, and VIII" of its earlier supplemental response to Sovereign's motion for summary judgment (which were all based on the Trustee's earlier stipulations) because of the Trustee's new position that the September premium had been timely paid and that no notice of alleged nonpayment or lapse was given to Durability. (II Appellant's App. at 524.)    Sovereign has never argued that it would have been prejudiced by withdrawal of the stipulations or the Trustee's new legal arguments. Indeed, it had adequate time to respond to the Trustee's change of position in its reply brief and thus suffered no prejudice from the change in position. *Cf. Sports Racing Servs., Inc.*, 131 F.3d at 879 n.6 (implying that, because it had an opportunity to reply, the moving party was not prejudiced by issues not raised in complaint but articulated in response to motion for summary judgment). The bankruptcy court made no findings that the Trustee's

---

[4](...continued)
regarding payment of the September 3 premium was not derived from this admission. It was based on Sovereign's own "notice of premium due" and "notice of returned check," and an affidavit by its second vice president stating that the premium was not received. Rule 56 allows consideration of those admissions that are "on file," i.e., in the record before the court. Because these admissions were not in the record, the bankruptcy court did not consider them in ruling on summary judgment, and Sovereign does not argue that the Trustee was bound by the initial formal admissions. We therefore do not analyze the issue as one involving formal admissions as opposed to factual stipulations made in the briefs.

change in position was unreasonable or inequitable.    Moreover, Sovereign did not move to strike Sullivan's affidavit and the bankruptcy court did not find that submission of the affidavit was a belated attempt to create an issue of fact where none existed.

The principle that  summary judgment  should not deprive litigants of their right to a full hearing on genuine fact issues, together with the absence of prejudicial effect or evidence of sham, weigh heavily in favor of allowing consideration of the affidavit.    Clearly, the better practice would have been for the Trustee to move the court for leave to withdraw the prior stipulations.  The supplemental response nevertheless sufficiently alerted the bankruptcy court and Sovereign to the Trustee's change in position.    *Cf. Bergemann* , 820 F.2d at 1120-21 (holding that a response to a motion for summary judgment can constitute a motion to withdraw admissions pursuant to Fed. R. Civ. P. 36(b)). We hold that the bankruptcy court abused its discretion in refusing to consider Sullivan's affidavit and attached exhibits and in binding the Trustee to his earlier stipulations.

## C

Having concluded that the bankruptcy court erred by refusing to consider Sullivan's affidavit and attached exhibits, we now review de novo whether, in light of this and other evidence in the record, the Trustee presented a genuine

issue of material fact to preclude summary judgment.  Whether the policy was an

assumable executory contract turns on the question of whether the contract

terminated before bankruptcy was filed. [5]  The Sullivan affidavit supports the

Trustee's claims that Sovereign had in fact received the September premium

payment and thus could not claim forfeiture for nonpayment, [6] and his alternative

---

[5] We reject Sovereign's argument that the Trustee waived and abandoned the issue of whether the policy was an executory contract.  The Trustee challenged all rulings that rested upon the bankruptcy court's finding that the premium had not been timely paid and its concomitant conclusion that the contract had lapsed before the bankruptcy action was filed and thus was not an executory contract.  He also challenged the magistrate judge's alternative basis for affirming summary judgment in his opening brief.

[6] We note that the Sullivan affidavit and attached exhibits are not the only evidence contrary to Sovereign's version of the facts.  In his first supplemental response the Trustee submitted to the bankruptcy court what appears to be a computer print-out from Sovereign that contains the date September 22, 1986, under the words "Last Prem," II Appellant's App. at 512, and that this date coincides with a date stamped on the front of the preauthorized check for the September policy premium that Sovereign issued to itself.  This evidence further supports an inference that a genuine issue of material fact exists as to whether the September premium was paid.  In addition, Farquhar was paid each month after premiums were collected by Sovereign and was also code-listed as the policy agent on an undated notice addressed to Durability that stated the policy had lapsed, yet Farquhar testified that he did not become aware that Sovereign claimed nonpayment of premiums and policy lapse until November 19, 1986.  It is reasonable to infer that if the premium had not been paid, Farquhar would have been notified or he would have noticed that he had not received payment of his commission.

argument that termination of the insurance contract was not proper because of lack of notice. [7] Summary judgment was therefore improper.

## D

On review, the district court adopted an alternative basis for summary judgment relied on by the magistrate judge: even if the policy premium for September had been timely paid, the Trustee admitted that the October 3, 1986, payment was not timely made, and Adelman's November 19, 1986, tender of payment would not have cured the October default. This conclusion is erroneous.

Section 108(b) of the bankruptcy code provides, in relevant part:

> if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor . . . may . . . cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only . . . cure, or perform, as the case may be, before the later of--(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) 60 days after the order for relief.

11 U.S.C. § 108(b). In *Autoskill Inc. v. National Educational Support Systems, Inc.*, 994 F.2d 1476 (10th Cir. 1993), we held that § 108(b) "extends *any* 'period' established by 'applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement'" and thus also extended the statutory

---

[7] We express no opinion on the merits of the Trustee's claims regarding notice of default; that issue should be addressed in the first instance by the bankruptcy court.

time in which the trustee could file a notice of appeal under Fed. R. Civ. P. 4. *Id.*

at 1484 (emphasis added). We noted that

> [a]lthough § 108(b) does not specifically refer to notices of appeal,
> the statute includes a broad catchall extending the time in which
> a debtor or trustee may "perform any other similar act" in addition
> to the steps listed. § 108(b); *see In re G-N Partners*, 48 B.R. 462,
> 467 (Bankr. D. Minn. 1985) (that § 108(b) is "broader" than listed
> items "is obvious from its reading").

*Id.* As the bankruptcy court itself pointed out, other courts have applied this

section to hold that if the grace period of an insurance contract has not expired

at the time the bankruptcy commences, and under the contract the policy remains

in force during the grace period if payment is made within the grace period, the

trustee is given sixty days to pay the premium and assume the contract. *See* II

Appellant's App., at 578 & n.6 (quoting *Counties Contracting & Constr. Co. v.*

*Constitution Life Ins. Co.*, 855 F.2d 1054, 1059 (3d Cir. 1988)); *accord, In re*

*John J. Sullivan, Inc.*, 128 B.R. 7, 9-10 (D. Mass. 1990).

Under the terms of the policy, in conformity with Oklahoma law, *see* Okla.

Stat. tit. 36, § 4003, Durability had a thirty-one day grace period during which to

make a past-due payment. Assuming Durability failed to pay in a timely manner

the October 3 premium, the policy's grace period had not expired on October 6,

the day the involuntary petition was filed in bankruptcy court. Therefore,

§ 108(b) gave the Trustee sixty days from October 6 to cure Durability's failure

to pay the October 3 premium, and the November 19 tender was timely.

-17-

**E**

Finally, we deny the Trustee's request for a money judgment in the amount of the face value of the policy plus interest. On remand, if the bankruptcy court determines that the Trustee was entitled to assume the contract, the Trustee may initiate further adversarial proceedings without prejudice to Sovereign regarding payment of the policy proceeds to the estate. At that time, Sovereign may raise other defenses, if any.

**III**

The judgment of the district court is **REVERSED** with instructions to **REMAND** to the bankruptcy court for further proceedings consistent with this opinion. The mandate shall issue forthwith.