**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL J. CONLON,
    *Plaintiff-Appellant,*

    v.

UNITED STATES OF AMERICA,
    *Defendant-Appellee.*

No. 05-15238

D.C. No.
CV-01-00700-DWH
(VPC)

OPINION

Appeal from the United States District Court
for the District of Nevada
David W. Hagen, District Judge, Presiding

Argued and Submitted
October 16, 2006—San Francisco, California

Filed January 16, 2007

Before: Susan P. Graber, M. Margaret McKeown, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Tallman

627

**COUNSEL**

James André Boles, Reno, Nevada, for the plaintiff-appellant.

Greg Addington, Assistant United States Attorney, District of Nevada, Reno, Nevada, for the defendant-appellee.

**OPINION**

TALLMAN, Circuit Judge:

Appellant Michael J. Conlon appeals the district court's entry of summary judgment against him under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-

2680. Conlon failed to respond to the government's Request for Admissions within the thirty-day time frame set forth in Federal Rule of Civil Procedure 36(a). Consequently, the United States by letter deemed its Request for Admissions admitted, and the government relied on those admissions when seeking summary judgment. We conclude that the district court did not abuse its discretion when it denied Conlon's motion to withdraw under Rule 36(b), and we affirm the district court's entry of summary judgment. We are satisfied that the district court conducted an appropriate analysis under Rule 36, properly considering both the factors elucidated in the rule, and that it did not clearly err in concluding that the government's case would have been significantly prejudiced by the withdrawal of Conlon's sweeping admissions on the eve of trial.

I

In 1986, Conlon was sentenced to a twelve-year term of federal imprisonment, with an eight-year special parole term to follow. His parole was revoked four times between 1990 and 1996. He was again released on November 7, 1997, with his special parole term set to commence on January 28, 1998, after the expiration of his twelve-year term.

On February 12, 1998, the United States Parole Commission ("Parole Commission") issued a warrant for Conlon's arrest. The warrant application stated that Conlon had failed to notify the Parole Commission of a change of address in violation of his special parole terms. He was arrested on February 19, 1998, and after Conlon admitted the allegations, his parole was revoked and the eight-year special parole term was converted to a regular term of twenty-four months of imprisonment.

On November 29, 1999, the United States District Court for the District of Arizona, the Honorable William D. Browning presiding, granted Conlon's petition for a writ of habeas cor-

pus, ordering him released on or before December 15, 1999. That court found that the Parole Commission never had jurisdiction to issue the warrant because the alleged violation occurred prior to the commencement of Conlon's special parole term.

In the spring of 2000, Conlon was arrested in Minnesota for failure to report to the Parole Commission upon his release. He reopened his previous habeas petition. Because the Arizona district court's original order granting habeas relief did not require Conlon to complete his special parole term, the court concluded that Conlon's failure to report was not improper. The Arizona district court then vacated Conlon's special parole term and ordered him released no later than August 3, 2001.

After exhausting his administrative remedies, Conlon filed a *pro per* civil action in the United States District Court for the District of Nevada.[1] The parties stipulated to dismiss all claims except those arising under the FTCA. In an order filed June 8, 2004, the Nevada district court dismissed on jurisdictional grounds all but the negligence claim arising out of Conlon's February 19, 1998, arrest and subsequent imprisonment.[2]

The court held a status conference on August 17, 2004. United States Magistrate Judge Valerie Cooke of the District of Nevada issued a scheduling order setting October 15, 2004, as the deadline for completion of discovery, and November 15, 2004, as the deadline for filing dispositive motions.[3] The trial was to commence on January 11, 2005.

---

[1]Through later retained counsel Conlon filed an amended complaint on March 19, 2002. A second amended complaint was filed on November 19, 2002.

[2]Conlon does not appeal this decision.

[3]Prior to this, Conlon had twice failed to attend scheduled settlement conferences.

The United States served its "First Set of Request for Admissions and First Set of Interrogatories" on August 19, 2004. In the first paragraph, the United States explicitly stated:

> Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure, defendant requests that plaintiff MICHAEL J. CONLON respond within thirty (30) days from service hereof, to the following requests for admissions. In accordance with Rule 36, the failure to respond within the time provided will result in the matters set forth being admitted.

Responses were due September 21, 2004. The more pertinent requests for admissions included Request #7: "The U.S. Parole Commission's issuance of the February 12, 1998 violator warrant was not caused by any negligent or wrongful act or omission of any employee of the United States"; Request #13: "Your February 20, 1998 [sic] arrest was not caused by any negligent or wrongful act or omission of any employee of the United States"; and Request #26: "No portion of your incarceration from February 20, 1998 [sic] to December 15, 1999 was caused by any negligent or wrongful act or omission of any employee of the United States."

Shortly after the thirty-day time frame passed, the United States contacted Conlon to discuss his past-due responses. In a follow-up letter dated September 28, 2004, the assistant United States attorney again warned Conlon of the consequences of his failure to respond:

> As we discussed last week, the responses to the discovery propounded on August 19 (request for admissions and interrogatories) are past due. There has been no request for an extension of the time established for such responses and, given the short discovery period set by the Court, there is no room for flexibility in this regard if additional discovery is

to be done (as was contemplated following receipt of the responses). Pursuant to [Rule 36 of the Federal Rules of Civil Procedure], the matters set forth in request for admissions numbered 1-27 are deemed admitted for the purpose of this pending action and I will proceed accordingly.

Prior to the October 15, 2004, discovery cut-off deadline, Conlon had not responded to the government's Request for Admissions, the September 28, 2004, follow-up letter, or filed a motion to withdraw his admissions with the Nevada district court under Rule 36(b). On November 3, 2004, Conlon sent deficient responses to the Request for Admissions.[4] In a letter dated November 5, 2004, the United States again told Conlon that his "failure to respond to the requests for admission in a timely manner resulted in those matters being deemed admitted." It further explained that because "the Court provided for a very short discovery period[,] . . . [t]he discovery propounded to [Conlon] was designed to obtain responses well in advance of the expiration of the discovery period so that additional discovery could be conducted based on the responses which were timely received."

On November 12, 2004, three days before the dispositive motions deadline, the United States filed a motion for summary judgment based on the "deemed admissions." On November 15, 2004, Conlon filed a Motion for Relief under Rule 36(b). He argued that (1) he was out of touch with his attorney during part of the period for answering the Request for Admissions, and his participation was essential; (2) once he was contacted the requests were answered forthwith; (3) relief would further the administration of justice, and denial would cause a hardship upon Conlon; and (4) relief would not unduly prejudice the United States. In conjunction with his Motion for Relief, Conlon also served on the United States a

---

[4]Conlon did not verify the responses and did not set forth the factual basis for any denials.

new set of answers, rectifying the deficiencies in the responses to interrogatories that were present in the first set. The United States opposed Conlon's Motion for Relief.

On January 3, 2005, Magistrate Judge Cooke denied Conlon's Motion for Relief. The court relied in part on the fact that counsel for the United States twice advised Conlon that the admissions were deemed admitted, and that Conlon sought relief only after the United States had filed a dispositive motion. Moreover, as Magistrate Judge Cooke observed, although Conlon claimed that he was "out of touch with his attorney during part of the time for answering the requests for admissions," he never "allud[ed] to any serious medical condition or other emergency which illustrate[d] the need for the relief requested, nor d[id] he identify which admissions were denied." Rather than simply ignoring the Request for Admissions, the district court concluded that, "[a]t minimum, [Conlon] should have sought leave of the court for an extension of time to serve the answers." Therefore, because Conlon "failed to show that presentation of the merits of this action will be subserved by permitting withdrawal of 'several' of the admissions," and because "the defendant will be severely prejudiced by allowing withdrawal of the admissions since a dispositive motion is in the midst of briefing and trial is set to commence in eight days," Magistrate Judge Cooke denied the Motion for Relief. Subsequently, the district court granted the government's motion for summary judgment, stating that the "Defendant's motion for summary judgment turn[ed] on admissions made by plaintiff during discovery."

II

We review a district court's denial of a motion to withdraw or amend a Rule 36 admission for an abuse of discretion. *999 v. C.I.T. Corp.*, 776 F.2d 866, 869 (9th Cir. 1985). "Trial courts [have been] advised to be cautious in exercising their discretion to permit withdrawal or amendment of an admission." *Id.*

The district court's decision to grant summary judgment is reviewed de novo. *Buono v. Norton*, 371 F.3d 543, 545 (9th Cir. 2004). Unanswered requests for admissions may be relied on as the basis for granting summary judgment. *O'Campo v. Hardisty*, 262 F.2d 621, 624 (9th Cir. 1958).

## III

**[1]** Rule 36(a) states that a matter is deemed admitted "unless, within 30 days after service of the request . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney." Fed. R. Civ. P. 36(a). Once admitted, the matter "is conclusively established unless the court on motion permits withdrawal or amendment of the admission" pursuant to Rule 36(b). Fed. R. Civ. P. 36(b). Rule 36(b) provides, in pertinent part:

> [T]he court *may* permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits.

*Id.* (emphasis added).

**[2]** Rule 36(b) is permissive, not mandatory, with respect to the withdrawal of admissions. *See Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1248 (9th Cir. 1981). The rule permits the district court to exercise its discretion to grant relief from an admission made under Rule 36(a) only when (1) "the presentation of the merits of the action will be subserved," and (2) "the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits." Fed. R. Civ. P. 36(b); *Hadley v. United States*, 45

F.3d 1345, 1348 (9th Cir. 1995); *see also Carney v. IRS* (*In re Carney*), 258 F.3d 415, 419 (5th Cir. 2001) ("[A] deemed admission can only be withdrawn or amended by motion in accordance with Rule 36(b)."); *Donovan v. Carls Drug Co.*, 703 F.2d 650, 652 (2d Cir. 1983) (stating that the court may excuse a party from its deemed admissions "only when (1) the presentation of the merits will be aided *and* (2) no prejudice to the party obtaining the admission will result"), *overruled on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133-34 (1988). However, because requests for admissions have a binding effect on the parties, *see* Fed. R. Civ. P. 36(b), the provision for withdrawal or amendment specifically provides parties with a potential safe harbor. *Id.*

**[3]** Admissions are sought, first, to facilitate proof with respect to issues that cannot be eliminated from the case and, second, to narrow the issues by eliminating those that can be. *Id.* advisory committee note. The rule is not to be used in an effort to "harass the other side" or in the hope that a party's adversary will simply concede essential elements. *Perez v. Miami-Dade County*, 297 F.3d 1255, 1268 (11th Cir. 2002). Rather, the rule seeks to serve two important goals: truth-seeking in litigation and efficiency in dispensing justice. *See* Fed. R. Civ. P. 36(b) advisory committee note. Thus, a district court must specifically consider both factors under the rule before deciding a motion to withdraw or amend admissions.

A

**[4]** "The first half of the test in Rule 36(b) is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case." *Hadley*, 45 F.3d at 1348. The United States filed its motion for summary judgment based on the deemed admissions. In granting that motion, the district court recognized that the motion "turn[ed] on admissions made by plaintiff during discovery." By operation of the rule Conlon "admitted that neither the issuing of the warrant, his arrest or his subsequent incarceration were caused by neg-

ligent or wrongful acts or omissions of United States employees." Therefore, because upholding the deemed admissions eliminated any need for a presentation on the merits, Conlon satisfies the first prong of the test in Rule 36(b).

B

**[5]** The party relying on the deemed admission has the burden of proving prejudice. *Id.*

> The prejudice contemplated by Rule 36(b) is 'not simply that the party who obtained the admission will now have to convince the factfinder of its truth. Rather, it relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence' with respect to the questions previously deemed admitted.

*Id.* (quoting *Brook Vill. N. Assocs. v. Gen. Elec. Co.*, 686 F.2d 66, 70 (1st Cir. 1982)).

In *Hadley*, 45 F.3d 1345, and *C.I.T. Corp.*, 776 F.2d 866, we addressed whether the nonmoving party would be prejudiced by a withdrawal of deemed admissions. In *Hadley*, the government served its requests after the discovery cut-off date set by the court. 45 F.3d at 1347. The answers were due by July 8, 1993, but were served a little over a month late on August 14, 1993. *Id.* Hadley filed a motion to withdraw the admissions soon thereafter. The government argued that it would be prejudiced because it had relied on the "deemed admissions" during its deposition of Hadley. *Id.* at 1349. The government had an affidavit from Hadley that corroborated the admissions and rather than "vigorous[ly] cross-examin[ing]" him, the United States limited the scope of its deposition questions to establishing that Hadley signed the affidavit and that it was true and correct. *Id.*

We rejected the government's argument against withdrawal, reasoning that "[e]ven if the affidavit had contained statements that directly corroborated the admissions, the government had the affidavit available for trial. If Hadley had denied liability at trial, the government could have cross-examined him with the affidavit itself." *Id.* (footnote omitted). Therefore, although withdrawal may have inconvenienced the government, that inconvenience did not rise to the level of prejudice that justified a denial of the motion to withdraw. *Id.*

By contrast, the moving party in *C.I.T. Corp.* did not seek withdrawal until the middle of trial.[5] 776 F.2d at 869. During the discovery period, in response to a request for admission, C.I.T. admitted that an August 2 letter constituted an agreement. *Id.* at 868-69. During trial, the district court excluded a September 23 letter because it contradicted the pre-trial admission. *Id.* at 869. In response, C.I.T. filed a motion to withdraw the admissions, which the district court denied. We affirmed. Although we recognized that there was a good argument that the withdrawal would not prejudice 999 because 999 had admitted other evidence of the agreement throughout the trial, we concluded that the district court was justified in its decision because of the timing of the motion. C.I.T. did not move for withdrawal until the middle of trial, after 999 had heavily relied on the admissions and was about to rest its case. *Id.*

Conlon's case falls somewhere between *Hadley*, where the motion to withdraw was made prior to trial but the government still had other contradictory evidence available, and *C.I.T. Corp.*, where the motion to withdraw was made during trial, after the other party had relied heavily on the admissions and was preparing to rest its case. The United States here argues that it would have been prejudiced by withdrawal

---

[5]A party moving to withdraw deemed admissions during trial faces a more restrictive standard than a party moving to withdraw deemed admissions prior to trial. *C.I.T. Corp.*, 776 F.2d at 869.

because, in reliance on the facts "conclusively established" by the deemed admissions, it chose not to conduct any other discovery that was necessary to disprove negligence. Moreover, it had relied on the admissions to file its motion for summary judgment, and the trial was scheduled to begin only eight days after the district court adjudicated Conlon's motion to withdraw the deemed admissions.

**[6]** When undertaking a prejudice inquiry under Rule 36(b), district courts should focus on the prejudice that the nonmoving party would suffer at trial. *See Sonoda v. Cabrera*, 255 F.3d 1035, 1039-40 (9th Cir. 2001) (holding, without further analysis, that the district court did not abuse its discretion by granting the Rule 36(b) motion to withdraw deemed admissions because the motion was made before trial and the nonmoving party would not have been hindered in presenting its evidence); *Hadley*, 45 F.3d at 1348 (focusing the prejudice inquiry on the unavailability of key witnesses and a sudden need to obtain evidence); *see also Raiser v. Utah County*, 409 F.3d 1243, 1247 (10th Cir. 2005) (finding no prejudice when the nonmoving party had relied on the deemed admissions for only a two-week period in preparing its summary judgment motion); *Perez*, 297 F.3d at 1268 (concluding that no prejudice would result because the nonmoving party had been conducting discovery throughout the discovery period, the motion was made only six days after the deadline, and withdrawal would not create a "sudden need" to gather evidence); *Kirtley v. Sovereign Life Ins. Co.* (*In re Durability Inc.*), 212 F.3d 551, 556 (10th Cir. 2000) (holding categorically that preparing a summary judgment motion by relying on admissions does not constitute prejudice); *FDIC v. Prusia*, 18 F.3d 637, 640 (8th Cir. 1994) (same); *Brook Vill.*, 686 F.2d at 70 (focusing on the difficulty that a party will face in proving his case at trial); *Moosman v. Joseph P. Blitz, Inc.*, 358 F.2d 686, 688 (2d Cir. 1966) (holding that there was no prejudice when the trial date would not be delayed).

**[7]** We think it is a close question whether withdrawal would have prejudiced the United States. We agree with the

other courts that have addressed the issue and conclude that reliance on a deemed admission in preparing a summary judgment motion does not constitute prejudice. *Kirtley*, 212 F.3d at 556; *Prusia*, 18 F.3d at 640. Although the United States relied on the deemed admissions in choosing not to engage in any other discovery, *cf. Perez*, 297 F.3d at 1268, we are reluctant to conclude that a lack of discovery, without more, constitutes prejudice. The district court could have reopened the discovery period, *see id.*, and prejudice must relate to the difficulty a party may face in proving its case at trial, *Hadley*, 45 F.3d at 1348.

[8] Nevertheless, this case involves more than a mere failure to comply with the deadlines. *Cf. Raiser*, 409 F.3d at 1247. Unlike the situation in *Perez*, the government relied on the admissions for a total of two and a half months, through the discovery and dispositive motion cut-off dates, with no indication that Conlon intended to file a motion to withdraw his admissions. *See Perez*, 297 F.3d at 1268 (finding no prejudice, in part, because Perez had relied on the admissions for only six days); *see also Raiser*, 409 F.3d at 1247 ("Only two weeks passed between the due date for Mr. Raiser's response and the date that he filed his initial motion to amend his admissions or allow an untimely response.").

[9] In addition, when the district court issued its order only eight days remained until trial. With trial imminent, the government relied heavily on Conlon's admissions, which essentially conceded the case. As a result, the government conducted none of the discovery it otherwise needed to prove its case at trial. We cannot speculate as to whether the United States would have had time, without requiring a continuance of the trial date, to prepare for and conduct any needed discovery. Although the issue is close, we conclude that the district court did not clearly err in finding that withdrawal of the deemed admissions at such a late stage in the case would prejudice the United States.

IV

Even if we disagreed with the district court's application of Rule 36(b), based on this record we still could not conclude that the district court abused its discretion in denying Conlon's motion to withdraw the deemed admissions. We have not previously opined on whether Rule 36(b) requires a district court to grant relief when the moving party can satisfy the two-pronged test. We hold that it does not. The text of Rule 36(b) is permissive. *See* Fed. R. Civ. P. 36(b) (stating that the district court "may permit withdrawal"); *In re Carney*, 258 F.3d at 419 (stating in dictum that "[e]ven when the[ ] two factors are established, a district court still has discretion to deny a request for leave to withdraw or amend an admission"); *United States v. Kasuboski*, 834 F.2d 1345, 1350 n.7 (7th Cir. 1987) (same); *Donovan*, 703 F.2d at 652 ("Because the language of . . . Rule [36(b)] is permissive, the court is not required to make an exception to Rule 36 even if both the merits and prejudice issues cut in favor of the party seeking exception to the rule."). *But see Perez*, 297 F.3d at 1264-65 (rejecting the argument that a district court may deny withdrawal even if the two-pronged test is met). Therefore, when a district court finds that the merits of the action will be subserved and the nonmoving party will not be prejudiced, it "may" allow withdrawal, but is not required to do so under the text of Rule 36(b).

Although the rule itself is permissive, the Advisory Committee clearly intended the two factors set forth in Rule 36(b) to be central to the analysis.[6] Accordingly, a district court's

---

[6]The Advisory Committee Notes to the 1970 amendments recognize that, "[u]nless the party securing an admission can depend on its binding effect, [that party] cannot safely avoid the expense of preparing to prove the very matters on which he has secured the admission, and the purpose of the rule is defeated." Therefore, by amending Rule 36(b), the Committee sought to "emphasize[ ] the importance of having the action resolved on the merits, while at the same time assuring each party that justified reliance on an admission in preparation for trial will not operate to his prejudice."

failure to consider these factors will constitute an abuse of discretion. *See Gutting v. Falstaff Brewing Corp.*, 710 F.2d 1309, 1313 (8th Cir. 1983) ("[T]he district court erred in not considering the factors set out in [R]ule 36(b)."). However, in deciding whether to exercise its discretion when the moving party has met the two-pronged test of Rule 36(b), the district court may consider other factors, including whether the moving party can show good cause for the delay and whether the moving party appears to have a strong case on the merits.

Here, the district court fully considered the two-pronged test set forth in Rule 36(b). In addition, it concluded that Conlon could not show good cause for his dilatory conduct. The court explained that although Conlon claimed that he was "out of touch with his attorney during part of the time for answering the requests for admissions," he "d[id] not allude to any serious medical condition or other emergency which illustrate[d] the need for the relief requested, nor d[id] he identify which admissions were denied."

This is not a situation in which the United States used a request for admissions to gain an unfair tactical advantage. *Cf. Perez*, 297 F.3d at 1268 (stating that Perez used the rule "to harass the other side . . . with the wild-eyed hope that the other side w[ould] fail to answer and therefore admit essential elements"). After the August 17, 2004, status conference, the district court issued a scheduling order setting October 15, 2004, as the discovery deadline and November 15, 2004, as the deadline for filing dispositive motions. The United States served its Request for Admissions on August 19, 2004, well within the allotted discovery period. *Cf. id.* at 1258 (revealing that Perez served his first request for admissions at the same time that he served his complaint). Moreover, Conlon had fair warning of the consequences of his noncompliance.

**[10]** Therefore, because Rule 36(b) is permissive, we cannot say that the district court abused its discretion in considering Conlon's failure to show good cause for the delay in filing

responses to the government's Request for Admissions. We do emphasize, though, that district courts must consider the factors laid out in the rule when deciding motions to grant or amend requests for admissions.

V

**[11]** Alternatively, Conlon argues that summary judgment should not have been granted because the Arizona district court had already concluded that the United States was negligent. Although the Nevada district court recognized in a previous order that the Arizona district court had determined that the Parole Commission did not have jurisdiction to issue the warrant, the Arizona district court never made a finding as to whether the Parole Commission acted negligently. Moreover, the government's position in defending the Nevada action was not contrary to, or inconsistent with, its use of the deemed admissions.

Because Conlon never presented any direct evidence of negligence by the Parole Commission (other than the Arizona district court's finding that it lacked jurisdiction to issue the warrant), we uphold the Nevada district court's entry of summary judgment against Conlon.

**AFFIRMED.**