**SECURITIES AND EXCHANGE COMMISSION, Plaintiff— Appellee,**

v.

**GLOBAL EXPRESS CAPITAL REAL ESTATE INVESTMENT FUND, I, LLC, Global Express Capital Mortgage Corp.; Global Express Securities, Inc., Defendants,**

Dawn M. Reese, Defendant,

and

Connie Farris, Defendant—Appellant.

Securities and Exchange Commission,
Plaintiff—Appellee,

v.

Global Express Capital Real Estate Investment Fund, I, LLC, Global Express Capital Mortgage Corp.; Global Express Securities, Inc.; Connie Farris, Defendants,

and

Dawn M. Reese, Defendant—Appellant.

Nos. 06–15940, 06–16659.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 12, 2008.

Filed Aug. 7, 2008.

Allan A. Capute, Jacob H. Stillman, Securities & Exchange Commission, Washington, DC, for Plaintiff–Appellee.

Richard A. Schonfeld, Goodman & Chesnoff, Las Vegas, NV, for Defendant–Appellant.

Before: HAWKINS, THOMAS, and CLIFTON, Circuit Judges.

## MEMORANDUM *

Connie S. Farris and Dawn M. Reese appeal the district court's grant of summary judgment in favor of the Securities and Exchange Commission ("SEC"), the remedies ordered by the court, and the court's disposition of several additional motions.

### I

The district court properly granted summary judgment against Farris, holding that she had violated section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a); section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C.

---

* This disposition is not appropriate for publication and is not precedent except as provided

§ 78j(b); and Rule 10b–5 thereunder, 17 C.F.R. § 240.10b–5, in the sale of Global Express Capital Real Estate Investment Fund I, LLC ("Global Capital") securities.

In order to prove securities fraud under section 17(a), section 10(b), and Rule 10b–5, the SEC must first establish that the defendants made a material misstatement or omission in connection with the offer or sale of a security. *Basic Inc. v. Levinson*, 485 U.S. 224, 231, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). A defendant may violate these provisions by making a statement and failing to include facts that would be necessary to make the statement not misleading. *SEC v. Fehn*, 97 F.3d 1276, 1290 n. 12 (9th Cir.1996). A publication may be misleading, even where every sentence is individually accurate and truthful, if the overall effect is deceptive. *See In re Convergent Techs. Sec. Lit.*, 948 F.2d 507, 512 (9th Cir.1991); *SEC v. C.R. Richmond & Co.*, 565 F.2d 1101, 1106–07 (9th Cir.1977).

An omitted fact is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976), *quoted in Basic*, 485 U.S. at 231, 108 S.Ct. 978 (applying *TSC* in Rule 10b–5 context). "[T]he standard ... [requires] a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder." *TSC*, 426 U.S. at 449, 96 S.Ct. 2126. The materiality of misstatements and omissions "relating to financial condition, solvency and profitability is not subject to serious

by 9th Cir. R. 36–3.

challenge." *SEC v. Murphy,* 626 F.2d 633, 653 (9th Cir.1980).

■ There is no dispute that investors in Global Capital securities were materially misled, as the district court properly concluded. Investors were given offering materials including a prospectus. The initial offering materials explicitly stated that Global Capital was prohibited from investing in delinquent loans. Although the prospectus was amended to allow investment in delinquent loans, investors were never affirmatively warned that a majority of the loans and deeds of trust accepted, purchased, or funded by Global Capital were non-performing. The offering materials represented that investors would receive a return on their investment in the form of monthly distributions derived from interest and fees earned by Global Capital on its loans and assets. The offering materials did not disclose that any other funding sources would be used to pay monthly returns. The monthly returns actually paid to investors were composed of "capital contributions" made by Farris, and of proceeds from the Global Capital offering and from sales of Global Capital assets. This money was funneled through Global Capital's loan servicing provider to create the impression that it was interest income. The misstatements and omissions created the false impression that Global Capital was profitable, an impression that would have assumed significance in the deliberations of any reasonable investor. The district court properly concluded that Farris was personally responsible for making the misleading statements by conveying the information to potential investors and to the SEC.

■ Violations of section 17(a)(1), section 10(b), and Rule 10b–5 also require a showing of scienter. *Aaron v. SEC,* 446 U.S. 680, 691, 697, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980). A showing of recklessness establishes the element of scienter. *Vernazza v. SEC,* 327 F.3d 851, 860 (9th Cir.2003); *Hollinger v. Titan Capital Corp.,* 914 F.2d 1564, 1568–69 (9th Cir. 1990) (en banc). Evidence establishes that Farris controlled the Global Capital fund manager, and that she decided which loans to accept into Global Capital. She therefore knew that non-performing loans were purchased by or accepted into Global Capital. Farris was responsible for determining the monthly rate of return to investors, and knew that the monthly returns came from sources other than interest payments. Farris instructed her employees not to keep detailed records of the disbursement of funds generated by the sale of Global Capital assets. Farris also certified the accuracy of the periodic reports filed with the SEC, expressly acknowledging that she had read them. Farris was thus reckless about whether the information available about Global Capital accurately reflected the financial health and management of Global Capital. The district court's grant of summary judgment on this issue was based on more than an adverse inference drawn from Farris's invocation of her Fifth Amendment privilege against self-incrimination. *See SEC v. Colello,* 139 F.3d 674, 677 (9th Cir.1998). There is no genuine issue of fact as to whether Farris had the requisite scienter. The district court properly granted summary judgment against Farris.

II

The district court also properly held Farris liable for aiding and abetting Global Capital's violations of the reporting requirements of Section 15(d) of the Exchange Act and Rules 12b–20 and 15d–13 thereunder. Section 15(d) provides that securities issuers that have filed registration statements with the SEC "shall file with the Commission ... such supplemen

tary and periodic information, documents, and reports as may be required...." 15 U.S.C. § 78*o*(d). "Rule 15d–13 implements section 15(d)'s disclosure provision by requiring issuers to file quarterly 10–Q reports." *Fehn*, 97 F.3d at 1289; *see also* 17 C.F.R. § 240.15d–13. Rule 12b–20 requires that, in addition to information explicitly required by other securities regulations, "there shall be added such further material information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made not misleading." 17 C.F.R. § 240.12b–20.

The elements of aiding and abetting a violation under section 15(d) are (1) the existence of an independent primary violation, (2) actual knowledge by the alleged aider and abettor of the independent primary violation and of her own role in furthering it, and (3) "substantial assistance" in the commission of the violation. *Ponce v. SEC*, 345 F.3d 722, 737 (9th Cir. 2003); *Fehn*, 97 F.3d at 1288.

■ Global Securities violated section 15(d) and Rules 12b–20 and 15d–13 by falsely reporting interest income in 10–Q reports that it had not in fact received. Global Securities also violated the reporting requirements by failing to disclose that Global Securities used new investor money, capital contributions from the Global Securities Manager, and other Global Securities assets to pay monthly investor returns, and by failing to disclose that Global Securities assets were being used to pay the expenses of other Global entities. Farris substantially assisted Global Securities' violations by reviewing, approving, and certifying the Global Securities' misleading public filings. *See Fehn*, 97 F.3d at 1293–94. Farris had actual knowledge of the primary violation and of her role in furthering it. There is no material factual dispute about any of these matters, and the district court properly granted summary judgment against Farris as an aider and abetter.

## III

The district court properly concluded that Reese was personally responsible for making the misleading statements by conveying the information to potential investors or to the SEC. However, a genuine issue of material fact exists as to whether Reese acted with the requisite scienter. Reese testified that she was the President of Global Securities in title only, and characterized herself as a salesperson who was unaware of the investments in and distributions from Global Securities. Reese argued that although she attracted investors to Global Securities, she relied on a prospectus that had been prepared by others. Reese claimed she was aware that Global Securities had accepted numerous non-performing loans, and was aware of the rates of return that were being paid to investors. This testimony, coupled with support from the records, is sufficient to raise a genuine issue of material fact concerning scienter. Therefore, the district court erred in granting summary judgment against Reese for securities fraud.

## IV

The district court enjoined Farris and Reese from future violations of the securities laws, held them jointly and severally liable for disgorging over $23 million, ordered them to pay civil penalties of $120,000 each, and barred Farris from serving as an officer or director of a public company in the future. Because we have reversed the judgment entered against Reese, we must also vacate the remedies imposed on her.

We review the district court's determination of appropriate remedies against

Farris under the deferential abuse of discretion standard. *See SEC v. First Pacific Bancorp,* 142 F.3d 1186, 1190 (9th Cir. 1998) (officer and director bar); *Fehn,* 97 F.3d at 1295 (injunction); *SEC v. Clark,* 915 F.2d 439, 453 (9th Cir.1990) (disgorgement).

### A

To obtain a permanent injunction, the SEC has the burden of showing there is a reasonable likelihood that the defendants will violate the securities laws in the future. *Fehn,* 97 F.3d at 1295. In predicting the likelihood of future violations, a court must assess the totality of the circumstances, and consider such factors as

> (1) the degree of scienter involved; (2) the isolated or recurrent nature of the infraction; (3) the defendant's recognition of the wrongful nature of [her] conduct; (4) the likelihood, because of the defendant's professional occupation, that future violations might occur; and (5) the sincerity of the defendant's assurances against future violations.

*Id.* at 1295–96.

■ In issuing a permanent injunction against Farris, the district court took into account the totality of the circumstances. The court noted that Farris acted with the "highest degree of scienter" in keeping the investment scheme alive for over a year, despite knowing that Global Capital's assets were non-performing and that the interest generated was insufficient to cover the monthly returns. The court also noted that Farris never acknowledged her wrongful conduct or provided assurances against future violations. The court characterized the violation as "egregious and recurring." Other factors, such as the fact that Farris controls multiple entities engaged in activities similar to those engaged in by Global Capital, support the court's conclusion. The district court did not

abuse its discretion in issuing a permanent injunction against Farris.

### B

■ Third tier civil penalties are appropriate when the defendant's violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and "such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii). Because Farris committed securities fraud, she satisfied the fraud requirement for third tier civil penalties. Because Global Capital operated like a Ponzi scheme—using the money provided by new investors to create returns for the original investors—it created a significant risk of substantial loss to the individuals who had invested $48 million in Global Capital. The district court did not abuse its discretion in ordering Farris to pay maximum civil penalties.

### C

A court may bar a person from serving as an officer or director of a public reporting company if the person committed a scienter-based fraud violation and the person's conduct demonstrates unfitness to serve as an officer or director. 15 U.S.C. §§ 77t(e), 78u(d)(2). Factors a court may consider in determining whether to order the bar include "(1) the egregiousness of the underlying ... violation, (2) the defendant's 'repeat offender' status, (3) the defendant's role or position when she engaged in the fraud, (4) the defendant's degree of scienter, (5) the defendant's economic stake in the violation, and (6) the likelihood that misconduct will recur." *First Pac.,* 142 F.3d at 1193 (some internal quotation marks omitted).

■ The district court noted that Farris violated the securities laws over an extended period of time, that she was principal, owner, and manager of each of the entity defendants and violated her duty to fund investors, that she acted with a high level of scienter, that she profited from her fraud by diverting millions of dollars to entities that she controlled, and that she sought to escape responsibility by blaming others. The district court did not abuse its discretion in concluding that Farris's fraudulent conduct demonstrated that she was unfit to be an officer or director of a public company.

### D

"The district court has broad equity powers to order the disgorgement of 'ill-gotten gains' obtained through the violation of the securities laws". *First Pac.*, 142 F.3d at 1191. Maintaining a fraudulent scheme so that one may continue to reap the benefit of hundreds of thousands of dollars of salaries and commissions is enough to support a disgorgement order. *Id.* at 1192. The district court is not required to trace every dollar fraudulently retained; the disgorgement amount must only be a reasonable approximation of the profits causally connected to the violation. *Id.* at 1193 n. 6. We have held, however, that it is improper to order a party to disgorge an amount ten times the unjust enrichment actually retained by the party. *Hateley v. SEC*, 8 F.3d 653, 656 (9th Cir. 1993). We have held that disgorgement of gross proceeds of an offering is appropriate when defendants controlled the entities that received the ill-gotten gains, even if defendants personally received only a fraction of the total offering proceeds, but we have done so only where the defendants were held jointly and severally liable with the corporations that profited directly from the offering. *First Pac.*, 142 F.3d at 1192.

■ The disgorgement amount ordered by the district court was calculated by adding all of the amounts received in cash by Global Capital and the Global Capital Manager from the sale of Global Capital units, interest income on loans, repayments of loan principal, and sales of real property. Farris was given no credit for amounts that were expended to satisfy legitimate Global Capital debts, nor was she given credit for value that remained in Global Capital and placed in receivership. Most of the funds included in the disgorgement order were not controlled by Farris directly, but by the Global entities. Although Farris had considerable control over the Global entities, the funds retained by the entities cannot be considered her personal ill-gotten gains. Because Farris was not held jointly and severally liable for these amounts with the Global entities, we remand to the district court for a new calculation of the disgorgement amount.

### V

Farris and Reese also appeal the district court's denial of a motion to stay discovery, denial of a motion to withdraw admissions, denial of a motion to recuse Judge Dawson, and failure to rule on a motion to compel discovery.

### A

We review the district court's ruling on a party's request to stay proceedings for abuse of discretion. *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir.1989). Absent a showing of substantial prejudice to the rights of the parties involved, the Constitution does not require a stay of civil proceedings pending the outcome of criminal proceedings. *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th Cir.1995). In determin-

ing whether to stay civil proceedings in the face of parallel criminal proceedings, a court must consider the particular circumstances and competing interests involved, and should consider (1) the extent to which the defendant's Fifth Amendment rights are implicated, (2) the interest of the plaintiffs in proceeding expeditiously, (3) the burden the proceedings may impose on the defendants, (4) the convenience of the court and the efficient use of judicial resources, (5) the interests of persons not parties to the civil litigation, and (6) the interest of the public in the pending civil and criminal litigation. *Id.* at 324–25. The case for staying civil proceedings is weak when no indictment has been returned. *Molinaro,* 889 F.2d at 903.

■ The magistrate judge correctly balanced Farris's Fifth Amendment interests against the other factors and reasoned that a stay of the proceedings would be prejudicial to the SEC, frustrate the work of the receiver, and lead to an inefficient use of the court's resources. In light of the fact that no criminal charges had been filed against Farris at the time she moved for a stay (nor were criminal charges ever filed), this conclusion was appropriate.

B

We review the district court's decision not to allow a party to withdraw or amend Rule 36 admissions for abuse of discretion. *Conlon v. United States,* 474 F.3d 616, 621 (9th Cir.2007). A court may permit the withdrawal of admissions when the presentation on the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal will prejudice that party in maintaining the action on the merits. Fed.R.Civ.P. 36(b). Where the moving party has satisfied both prongs of the Rule 36(b) test, the district court may allow withdrawal, but is not required to do so. *Conlon,* 474 F.3d at 625. The district court may consider other factors, such as whether the moving party can show good cause for the delay. *Id.*

The first prong of the 36(b) analysis "is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case." *Conlon,* 474 F.3d at 622 (internal quotation marks omitted). Because Reese's admissions closely tracked the allegations in the SEC complaint, the first prong is satisfied.

■ The SEC had the burden of proving that the withdrawal of Reese's admissions would prejudice it in maintaining the case on the merits. *Id.* Because Reese filed her motion for withdrawal almost two months after the SEC's motion for summary judgment, more than three months after written discovery had closed, and near the time that deposition discovery closed, the SEC may have succeeded in establishing that it would have been prejudiced by the withdrawal. *Id.* at 624. Even if Reese had satisfied both prongs of the 36(b) test, we would affirm the district court's denial of her motion to withdraw. The district court found that Reese did not have good cause for delay, and that her delay was part of her manipulative approach to the litigation and her abuse of the privilege against self-incrimination. The district court did not abuse its discretion in denying Reese's motion to withdraw her admissions.

C

■ We review the district court's denial of a motion for recusal for abuse of discretion. *Yagman v. Republic Ins.,* 987 F.2d 622, 626 (9th Cir.1993). Under 28 U.S.C. § 455, a judge must recuse himself where "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably

be questioned." *Id.* at 626 (internal quotation marks omitted). Recusal motions must be lodged in a timely fashion. *Preston v. United States,* 923 F.2d 731, 732–33 (9th Cir.1991). Farris's recusal motion, filed after twenty-three months of active litigation, was untimely. *Id.* at 733 (filing a recusal motion eighteen months after a case is set before a particular judge, and shortly after the judge has denied the party's request to extend discovery, should usually be considered untimely). In addition, Farris failed to explain how Judge Dawson was connected to any party with an interest in the case. *See id.* at 735 (for recusal to be appropriate, party must have some interest in the case). The district court did not abuse its discretion in denying Farris's recusal motion.

### D

 A district court's failure to rule on a motion to compel discovery is a failure to exercise discretion, and as such is reviewed de novo. *Garrett v. City of San Francisco,* 818 F.2d 1515, 1518 n. 3 (9th Cir.1987). The testimony Farris sought—about the industry custom of advertising a fixed rate of return—was irrelevant to the district court's ruling on securities fraud. The district court based its ruling on multiple misstatements regarding Global Capital's operation and financial stability, not on promises of a fixed rate of return. Had Farris been able to establish an industry custom of advertising a fixed rate of return, summary judgment would have been equally appropriate. The district court did not commit reversible error when it failed to rule on Farris's motion to compel testimony.

### VI

For the foregoing reasons, we reverse the district court's grant of summary judgment with respect to Reese, and we re-

mand to the district court for recalculation of Farris's disgorgement figure. In all other respects, we affirm the district court.

**AFFIRMED IN PART; REVERSED and REMANDED IN PART.**

Each party shall bear its own costs on appeal.