IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DANIEL NUNEZ, *Petitioner*,

*v.*

IRENE O'CONNOR VALENTE, *Respondent*.

No. 1 CA-SA 25-0214

FILED 04-24-2026

Petition for Special Action from the Superior Court in Maricopa County
No.  CV2024-014615
The Honorable Timothy J. Ryan, Judge (Retired)
The Honorable Gregory Como, Judge

**JURISDICTION ACCEPTED; RELIEF GRANTED;
VACATED AND REMANDED**

COUNSEL

Law Office of Roman A. Kostenko, Phoenix
By Roman A. Kostenko
*Counsel for Petitioner*

Hrnicek Law, PLLC, Phoenix
By Michael J. Hrnicek
*Counsel for Respondent*

_____

## OPINION

Judge Andrew M. Jacobs delivered the opinion of the Court, in which Presiding Judge D. Steven Williams joined. Judge Michael S. Catlett filed a dissenting opinion.

_____

**J A C O B S**, Judge:

**¶1** In this special action, Plaintiff Daniel Nunez challenges the superior court's denial of his motion to withdraw admissions under Arizona Rule of Civil Procedure ("Rule") 36(b). When a party fails to respond to requests for admission within 30 days, as Nunez did here, they are deemed admitted. Ariz. R. Civ. P. 36(a). But Rule 36(b) lets a party withdraw such admissions by leave of court if withdrawal would: (1) promote the presentation of the case's merits; and (2) not prejudice the party who requested the admissions. Here, the admissions would decide most or all of the case, and Defendant Irene Valente moved to deem them admitted when Nunez's responses were three days late.

**¶2** We exercise our discretionary special action jurisdiction because Nunez's petition presents a recurring legal issue of statewide importance: whether in deciding if a party may withdraw a matter deemed admitted under Rule 36(b), the superior court must consider if withdrawal would promote the presentation of the merits of the action and would prejudice the requesting party in defending the action on its merits. Ariz. R.P. Spec. Act. 12(b)(4). Resolving this issue also materially advances the efficient management of the case. Ariz. R.P. Spec. Act. 12(b)(7). We grant relief and vacate the court's orders denying Nunez's motion because it didn't apply two requirements in the plain text of Rule 36(b), instead deciding Nunez's motion to withdraw based on a "good cause" gloss not found in Rule 36(b)'s text or any Arizona Supreme Court case.

## FACTS AND PROCEDURAL HISTORY

### A. Nunez and Valente Litigate Over the House in Which They Lived and Their Broken Engagement.

**¶3** For a time, Nunez and Valente were engaged to be married and lived together. After they broke up, Nunez sued Valente, seeking to partition a house they owned jointly. Valente responded with a nine-count counterclaim, including claims for breach of promise to marry (Count I),

unjust enrichment (Count IV), declaratory relief (Count VII), and quiet title (Count VIII). Valente alleged the house was hers, and that Nunez promised to marry her, tricking her into letting him live in her house, but breached his promise, and intentionally and negligently inflicted emotional distress on her. Valente's allegations, if proved, could bar Nunez from the equitable remedy of partition and would establish her sole title to the home, allowing her to prevail on her declaratory relief and quiet title claims.

¶4            The court then entered a scheduling order on February 18, 2025. The scheduling order required both parties to provide their Rule 26.1 disclosures by February 3 (more than two weeks before the court entered the order). The scheduling order required all discovery under Rules 33-36 to be served by February 28. It expressly allowed that the responding party would get five additional mailing days after service in addition to the thirty days to respond.

### B.  When Nunez's Responses to Requests for Admissions Are Three Days Overdue, Valente Moves to Strike Nunez's Complaint as a Sanction for His Late Discovery Responses.

¶5            Valente served requests for admission on February 28, seeking admissions of matters ultimate to her claims, that Nunez: (1) pressured her to add him to her home's deed; (2) didn't financially contribute to the home; (3) made Valente buy her own engagement ring; (4) cheated on her; (5) didn't intend to marry her; and (6) broke his promise to marry her.

¶6            Nunez's responses to the requests for admission and other discovery were due on April 7. *See* Ariz. R. Civ. P. 6 cmt. (2011 Amendment to Rule 6(c)) ("Five days are added after the prescribed period [e.g., the 30 days for response] otherwise expires under Rule 6(a)."). The 30-day period ran from February 28 (a Friday) to March 30 (a Sunday) – except Rule 6(a)(3) excludes Sundays, so the 30-day period prescribed in Rule 36 for response expired on March 31. Ariz. R. Civ. P. 6(a)(3). Adding five days for mail service made the responses due the following Monday, April 7. Nunez did not respond by April 7.

¶7            On April 10, Valente moved to strike Nunez's complaint as a sanction for not providing his discovery responses timely and not providing a disclosure statement in February. She argued "Nunez has abandoned his claims," citing Ariz. R. Civ. P. 41.

¶8            On April 20, Nunez moved to withdraw the admissions resulting from his late responses to Valente's February 28 requests for

admission. He argued Rule 36(b) and *DeLong v. Merrill*, 233 Ariz. 163 (App. 2013), required a showing of actual prejudice to justify barring Nunez from withdrawing his deemed admissions. Nunez argued there was no prejudice because: delay itself is not prejudicial under *DeLong*; Valente had not yet relied on the admissions; discovery was not closed; and trial was not yet scheduled. Nunez also argued that withdrawing the admissions would promote presenting the case's merits, because the admissions would defeat his lawsuit for partition, which Valente likewise argued in her motion to strike.

¶9 On May 12, Valente argued that she was prejudiced by fashioning her February 28 discovery without the benefit of Nunez's disclosure statement. She suggested that Nunez should have to reimburse her fees and costs incurred from his delays. As Nunez went on to point out in reply, Valente did not discuss *DeLong v. Merrill* or its analysis of prejudice under Rule 36.

### C. The Superior Court Declines to Strike Nunez's Complaint, But Denies His Motion to Withdraw His Admissions, While Suggesting He Move For Reconsideration.

¶10 On May 27, the superior court briefly heard argument on the motion to withdraw admissions before ruling from the bench against Nunez. Both sides agreed the court was upset. At the next hearing, Nunez described the court as having been "very angry" the day it ruled and Valente agreed the court was "so upset and properly so." The court let those assertions stand without comment. Valente had argued Nunez's counsel's voicemail box was full on February 28, preventing him from leaving a voice message the day the discovery was served. Nunez's lawyer asked to respond, and the court stated "No. You may not. If it's full, you're doing a bad job as a lawyer. . . . End of story."

¶11 At the hearing, Nunez argued it was wrong for Valente to skip over Rule 37's mechanisms to compel further production or seek court intervention before proceeding straight to case-terminating sanctions. Valente again did not argue prejudice under Rule 36(b). Instead, she claimed Nunez had abandoned prosecution of this case "for months," thus excusing any effort to work under Rule 37 to obtain more disclosure or discovery. Valente emphasized that "The voicemail from Mr. Kostenko was full. I couldn't get ahold of him." The February 28 voicemail incident, about which the court did not allow Nunez's counsel to speak, occurred before the discovery was pending, due, or late.

¶12         The court denied the motion to withdraw the admissions for lack of good cause, without mentioning prejudice. The court invited Nunez to move to reconsider, noting that a new judge would soon take over the matter. The court's May 29 minute entry repeated its denial of the motion to withdraw admissions, and did not discuss prejudice. The court denied the motion to strike Nunez's complaint.

**D.    The Court Denies Nunez's Motion for Reconsideration It Invited, Again Without Discussing Prejudice to Valente.**

¶13         On May 30, Nunez moved the court to reconsider the denial of his request to withdraw the admissions. He argued the ruling contravened Rule 36(b)'s requirement of prejudice, which he argued Valente had not shown and could not show. He also argued the ruling defeated truth-seeking by effectively resolving the case as a discovery sanction for a miniscule delay. Nunez filed a declaration showing his proposed proofs, many drawn from Valente's own documents, that the deemed admissions were false.

¶14         On June 20, Valente responded. She cited no case authority concerning Rule 36 and did not respond to Nunez's arguments concerning Rule 36(b)'s prejudice requirement. She again explained that having to prepare discovery without disclosure was prejudicial, and that Nunez violating procedural rules by failing to respond to requests for admission on time was prejudice. Valente argued for the first time that Rule 37's provisions for punishing discovery misconduct applied and gave the court authority to address Nunez's deficient discovery responses.

¶15         On July 11, the superior court denied the motion for reconsideration, stating "motions for reconsideration are disfavored" and should "be granted only in highly unusual circumstances." The court also found there was "nothing reasonable" about the failure to provide the responses and that the responses were "not case dispositive."

¶16         On July 25, Nunez filed this special action.

## DISCUSSION

### I.     We Exercise Our Discretionary Special Action Jurisdiction Over Nunez's Petition.

#### A.     The Special Action Standard

**¶17**            Special action jurisdiction is discretionary.  Ariz. R.P. Spec. Act. 12(a).  The proper construction and application of procedural rules is commonly a basis for us to exercise our discretionary special action jurisdiction.  *See, e.g.*, *Club West Conservancy v. Shea Homes Ltd. P'ship*, --- Ariz. ---, --- ¶ 12, 581 P.3d 228, 231 (App. 2025) ("[W]e have often accepted [special action] jurisdiction to interpret legal rules."); *Kelly v. Blanchard*, 255 Ariz. 197, 200 ¶ 10 (App. 2023) (exercising discretionary special action jurisdiction because "[t]he relief requested requires the resolution of a narrow and purely legal issue involving the interpretation of a court rule").  The proper construction and application of Rule 36(b) – in particular, Rule 36(b)'s command that the court evaluate requests to withdraw deemed admissions by gauging whether withdrawal (a) promotes the presentation of the merits and (b) prejudices the other party – is a recurrent, purely legal issue of statewide importance.  *See* Ariz. R.P. Spec. Act. 12(b)(4).  This is so in part because most of the time and effort spent in civil litigation is in discovery, and the core rules under which most civil discovery occurs are Rules 30, 33, 34, and 36.  Taking jurisdiction also "clarifies a rule of law," or "[c]alls attention to a rule of law that is generally overlooked," *see* ARCAP 28, given that the omission to apply Rule 36(b)'s plain language recurs in Arizona civil litigation.  Because the court did not perform either of the two tests the rule's plain text mandates in refusing to allow a deemed admission withdrawn (while relying on a "good cause" gloss not found in the rule), we exercise our discretionary jurisdiction to explain the correct interpretation and application of Rule 36(b).

#### B.     The Dissent

**¶18**            Because the exercise of our special action jurisdiction is "highly discretionary," *Am. Family. Mut. Ins. Co. v. Grant*, 222 Ariz. 507, 511 ¶ 9 (App. 2009), we appreciate our dissenting colleague voting not to do so.  In a "highly discretionary" regime, judges can reasonably differ over when to exercise that discretion.  When to exercise it can be an art, despite efforts to nudge it closer to science, like the Arizona Supreme Court's recent revisions to the special action rules, creating a robust set of criteria we are to follow in exercising that discretion.  *See* Ariz. R.P. Spec. Act. 12(b), (c) (stating criteria for the exercise or not of special action jurisdiction).  But the

dissent's suggestion that our choice to exercise jurisdiction over an incorrect interpretation of a court rule is beyond that broad discretion, and even violates the separation of powers in the Arizona Constitution, is incorrect.

### 1.    The Superior Court Interpreted Rule 36(b).

¶19        With respect, the dissent's theory that where the superior court doesn't follow a rule, it isn't *interpreting* the rule, so Nunez identifies no legal error for us to review, is incorrect.  Dissent, Paragraph 79 ("Nunez hasn't asked us to interpret Arizona Rule of Civil Procedure ("Rule") 36.").  Refusing to consider prejudice and whether withdrawing an admission promotes the merits of the case – two things the plain text of Rule 36(b) requires – and substituting a judicially-crafted "good cause" gloss in their place, reflects an incorrect interpretation of Arizona law.  Under well-established law, failing to apply both prongs of Rule 36(b) is an error of law, not an error of fact, as the dissent contends.  *Compare DeLong*, 233 Ariz. at 167 ¶ 11 ("a court's failure to consider them both is an abuse of discretion") *with* Dissent, Paragraph 79.  Accepting the dissent's novel theory that misconstructions or misunderstandings of rules of law are not interpretive would undo much of our jurisprudence about when we accept jurisdiction.

¶20        Examples illustrating this point abound.  In *White v. State*, our dissenting colleague wrote for a panel that properly exercised its special action jurisdiction to correct the superior court's misapplication of Arizona Rules of Criminal Procedure 26.9 and 1.5(c).  259 Ariz. 310, --- ¶¶ 7-8, 565 P.3d 1062, 1064 (App. 2025).  The superior court's error in *White* was no affirmative misstatement of the rule.  It was, as here, a simple failure to apply the rule correctly to the facts of that case.  *Id.* at 1065 ¶ 15 (finding it was discretionary rather than mandatory for the court to order the defendant appear in person for sentencing).  We agree with our dissenting colleague's statement in *White* that such an issue "is purely legal . . . likely to recur, and of statewide importance," and thus supports the exercise of special action jurisdiction.  *Id.* at 1064 ¶ 7.  Failing to apply Rule 36(b)'s prejudice requirement at all, and misapplying Rule 36(b)'s requirement to consider whether withdrawing the admissions would promote presentation of the merits (by reducing it to whether the admissions are "case dispositive"), is no different.  These are errors in understanding and applying a procedural rule, just like in *White*.  Our job as a Court of Appeals includes lifting up a rule's text, explaining the proper understanding of it, and encouraging courts to enforce the rule according to its commands.

¶21        In *Club West*, our dissenting colleague again correctly found the exercise of special action jurisdiction appropriate to review the incorrect

application of two rules of civil procedure, deeming such issues "likely to recur, and of statewide importance." 581 P.3d at 230-31 ¶¶ 11-13 (reviewing erroneous applications of Arizona Rules of Civil Procedure 59(d) and 6(b)(2)). We accept jurisdiction today for the same reasons we did in *Club West* – because "interpret[ing] procedural rules using undisputed facts [is] a pure legal question," *id.* at 231 ¶ 11, and as such "it is particularly appropriate for us to accept jurisdiction." *Id.* (quoting *Sw. Gas Corp. v. Irwin*, 229 Ariz. 198, 201 ¶ 7 (App. 2012)). When Valente sent her discovery, when it was due, and what is in the pleadings of this case are all undisputed facts. Just like *Club West*, this case presents a purely legal question – here, whether the superior court failed to apply Rule 36(b), which requires the court to perform a two-part legal test. Omitting to follow Rule 36(b)'s textual commands is an error of law. Saying so does not require resolving factual disputes, nor does it present a mixed question of fact and law. *Compare* Dissent, Paragraph 79.

**¶22**      *White* and *Club West* correctly followed a long line of such cases, as we do today. *E.g., Yauck v. West Town Bank & Trust*, 259 Ariz. 481, --- ¶¶ 12, 45, 568 P.3d 386, 390, 397 (App. 2025) (exercising special action jurisdiction and reversing erroneously allowed pre-judgment discovery not supported by Arizona Rules of Civil Procedure 64 or 69: "because the interpretation of statutes and court rules is a matter of law reviewed de novo, cases presenting such issues are 'particularly appropriate for review by special action'") (quoting *Sierra Tucson, Inc. v. Lee ex rel. Cnty. of Pima*, 230 Ariz. 255, 257 ¶ 7 (App. 2012)); *Purdy as Tr. of Survivors of Jones v. Metcalf*, 252 Ariz. 270, 274, 277-78 ¶¶ 13, 26-27 (App. 2021) (exercising special action jurisdiction to reverse partial summary judgment for failure to comply with legal standard in Arizona Rule of Civil Procedure 56; because there were "genuine issues of material fact," court "erred by concluding otherwise").

### 2.    The Dissent Likewise Interprets Rule 36(b), Arguing a Good Cause Requirement Not Found in the Rule Is Dispositive.

**¶23**      While arguing there is no interpretation of Rule 36 to review, Dissent, Paragraph 79, the dissent reinforces the need for the exercise of jurisdiction here by embracing and reprising the superior court's misinterpretation of the rule. It does so by suggesting that an extratextual, judicially-created "good cause" gloss on Rule 36(b) gets the court out of having to consider prejudice and presentation of the merits – the two things the plain text of Rule 36(b) expressly commands that courts consider in exercising their discretion. *Compare* Ariz. R. Civ. P. 36(b), *with* Dissent, Paragraph 79. The dissent's critique is especially inapt, because the Court

of Appeals case it claims to champion – *DeLong* – emphatically rejected the very legal error the superior court made and the dissent repeats. 233 Ariz. at 167 ¶ 11 ("Although the court has the discretion to permit withdrawal or amendment of an admission, *prejudice is one of the two factors central to the analysis, and a court's failure to consider [] both [prongs of Rule 36(b)] is an abuse of discretion*.") (emphasis added).

**¶24** With respect, the "primary question . . . on which Nunez must prevail" in this special action cannot be whether "the superior court abuse[d] its discretion by finding [Nunez] lacked 'good cause' for responding late[.]" Dissent, Paragraph 83. Whether the superior court properly applied Rule 36(b) here is a question of whether it followed the unmistakable textual commands in the rule, not whether it ruled based on a standard the Arizona Supreme Court deliberately left out of the rule.

**¶25** How clear is it that the Arizona Supreme Court left "good cause" out of the rule on purpose? Very. Our highest court drafted not one, not ten, but a whopping fifty-nine rules or subrules in the Arizona Rules of Civil Procedure where a showing of "good cause" decides the issue.[1] But Rule 36(b) isn't one of them. That is for a reason. One of the most well-established canons of statutory construction is *expressio unius est*

---

[1] They are: Ariz. R. Civ. P. 4(i); Ariz. R. Civ. P. 4.1(c)(2); Ariz. R. Civ. P. 4.2(d)(2); Ariz. R. Civ. P. 5.3(a)(2)(C); Ariz. R. Civ. P. 5.3(c)(4)(B); Ariz. R. Civ. P. 6(b)(1); Ariz. R. Civ. P. 7.2(f); Ariz. R. Civ. P. 8(j)(4); Ariz. R. Civ. P. 16(c)(3)(I); Ariz. R. Civ. P. 16(c)(5); Ariz. R. Civ. P. 16(c)(6)(A); Ariz. R. Civ. P. 16(f)(2)(D); Ariz. R. Civ. P. 16(f)(2)(E); Ariz. R. Civ. P. 16(f)(2)(F); Ariz. R. Civ. P. 16(h); Ariz. R. Civ. P. 16.1(c); Ariz. R. Civ. P. 26(b)(2)(B)(i); Ariz. R. Civ. P. 26(b)(2)(B)(ii); Ariz. R. Civ. P. 26(b)(4)(F); Ariz. R. Civ. P. 26(b)(5); Ariz. R. Civ. P. 26(c)(1); Ariz. R. Civ. P. 26(c)(4); Ariz. R. Civ. P. 26(e)(1); Ariz. R. Civ. P. 26(e)(4); Ariz. R. Civ. P. 26(f); Ariz. R. Civ. P. 26.3(b); Ariz. R. Civ. P. 27(a)(2); Ariz. R. Civ. P. 27(a)(3); Ariz. R. Civ. P. 30(a)(1); Ariz. R. Civ. P. 31(a)(1); Ariz. R. Civ. P. 32(c); Ariz. R. Civ. P. 33(b)(3); Ariz. R. Civ. P. 34(b)(3)(E)(iii); Ariz. R. Civ. P. 35(f); Ariz. R. Civ. P. 37(c)(1); Ariz. R. Civ. P. 38.1(b)(1); Ariz. R. Civ. P. 40(c); Ariz. R. Civ. P. 40(h)(1)(B); Ariz. R. Civ. P. 40(i)(2); Ariz. R. Civ. P. 43(e); Ariz. R. Civ. P. 44(a)(2)(C); Ariz. R. Civ. P. 45(c)(2)(D); Ariz. R. Civ. P. 45(c)(5)(A); Ariz. R. Civ. P. 45(e)(1)(A); Ariz. R. Civ. P. 45(e)(1)(B); Ariz. R. Civ. P. 45.2(e)(3); Ariz. R. Civ. P. 47(b)(2); Ariz. R. Civ. P. 55(c); Ariz. R. Civ. P. 58(a)(2)(A); Ariz. R. Civ. P. 59(g)(1); Ariz. R. Civ. P. 65(b)(3); Ariz. R. Civ. P. 69(c)(1); Ariz. R. Civ. P. 72(b)(3); Ariz. R. Civ. P. 73(c)(3); Ariz. R. Civ. P. 73(g)(1); Ariz. R. Civ. P. 75(b)(3); Ariz R. Civ. P. 75(d)(8); Ariz. R. Civ. P. 75(g); and Ariz. R. Civ. P. 77(f)(6).

*exclusio alterius*, which means "the expression of one item implies the exclusion of [all] others." *City of Surprise v. Ariz. Corp. Comm'n*, 246 Ariz. 206, 211 ¶ 13 (2019). Under this canon, where "a statute specifies under what conditions it is effective, we can ordinarily infer that it excludes all others." *Boynton v. Anderson*, 205 Ariz. 45, 48 ¶ 8 (App. 2003); *see also Bobrow v. Herrod*, 239 Ariz. 180, 182 ¶ 7 (App. 2016) ("We analyze procedural rules using principles of statutory construction."). When the Arizona Supreme Court employs good cause fifty-nine times in the Arizona Rules of Civil Procedure – but not here – we don't have a license to rewrite Rule 36(b) to include it. The dissent's silence on this point confirms the correctness of this analysis.

**¶26**     "Good cause" for the delay also cannot be dispositive because inserting it into Rule 36(b) contradicts the rules for how we construe procedural rules and statutes. When analyzing procedural rules, "we apply 'fundamental principles of statutory construction, the cornerstone of which is the rule that the best and most reliable index of a [rule]'s meaning is its language and, when the language is clear and unequivocal, it is determinative of the [rule]'s construction.'" *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 214 Ariz. 293, 296 ¶ 8 (2007) (quoting *Janson ex rel. Janson v. Christensen*, 167 Ariz. 470, 471 (1991)). It is legal error to interpret Rule 36 to make irrelevant the commands in the plain text of the rule, while assigning dispositive significance to a lack of "good cause" for Nunez's brief delay in answering the discovery. *See Bolding v. Hantman*, 214 Ariz. 96, 100 ¶ 16 (App. 2006) ("[W]e will not 'judicially create' an exception to the Rule's plain meaning.") (quoting *State v. Ring*, 131 Ariz. 374, 378 (1982)).

**¶27**     With great respect for our dissenting colleague, it is the dissent's interpretation of Rule 36(b) to make an extra-textual "good cause" requirement replace and defeat Rule 36(b)'s plain commands (and not our accepting special action jurisdiction here) that is in excess of this Court's authority. *Cullen v. Auto-Owners Ins. Co.*, 218 Ariz. 417, 420 ¶ 13 (2008). The "Arizona Constitution grants [our supreme court] the power to create all procedural rules," and as a result "the Arizona Rules of Civil Procedure may be revised only through our [supreme court's] inherent power to interpret procedural rules or through the procedures established in Rule 28," allowing our supreme court to adopt proposed amendments to court-promulgated rules. *Id.* at 420 ¶ 12 (citing Ariz. Const. art. 6, § 5, cl. 5).

**¶28**     The dissent's charge in Paragraph 78 that we "disregard[] traditional limits on our jurisdiction" fails badly. Seeking to support it, the dissent repeats in full text all of the parts of Rule 4 of Special Action procedure that *don't* describe why we accept jurisdiction, as if those were

the only grounds, which suggests we thus exercise our jurisdiction based on some absent, impermissible ground. But despite our taking jurisdiction because of the superior court's legal error, the dissent omits to quote or acknowledge that ground. *Compare* Dissent, Paragraph 78, *with* Ariz. R.P. Spec. Act. 4(c) ("A special action may be brought . . . if a lower court or a body, officer, or person . . . made a decision that was . . . an abuse of discretion, *which can include a legal error*.") (emphasis added). We appreciate that the dissent insists that omitting to follow Rule 36(b)'s plain text is neither a legal nor an interpretive issue, but that's incorrect, for reasons we have already explained. *See supra* Paragraphs 19-22. Disagreeing about whether the error at issue is purely legal or not provides no basis to contend we disregard the constitutional or statutory bases for our jurisdiction. *See* Dissent, Paragraph 48.

¶29　　　　The dissent tries to support its critique that we're exceeding our jurisdiction by claiming Nunez didn't raise the legal error we review today as a basis for special action jurisdiction. But that's wrong too, as attention to the relevant text again shows. Nunez argued in his petition that the superior court "misapplied the controlling legal standard under Rule 36(b), and created a manifest injustice." He argued in his reply that "[b]y utterly failing to engage with either prong of this mandatory test, Respondent concedes the trial court applied the wrong legal standard, which is a clear abuse of discretion." Our points exactly. While the dissent's vote against jurisdiction is a narrow and fair point of disagreement, Nunez raised legal error in these and other passages of his filings. We thus exercise our jurisdiction, as we commonly do, based on his claims of legal error.

¶30　　　　Finally, while we also cite *DeLong* in our decision today, the dissent's interpretation of Rule 36 places far more weight on good cause than *DeLong* did while introducing the "good cause" gloss to analysis of Rule 36 in the first place. The panel in *DeLong* didn't suggest good cause was dispositive. *See DeLong*, 233 Ariz. at 167-68 ¶ 15 ("Trial courts *may* consider other factors, including whether there was good cause for the delay and the merits of the moving party's case.") (emphasis added). Nor does *DeLong* suggest that if a court finds a lack of good cause it is free to disregard Rule 36(b)'s text. Indeed, *DeLong* interprets Rule 36(b) as we do, and rejects the dissent's interpretation of it. *Id.* at 167 ¶ 11 ("Although the court has discretion to permit withdrawal or amendment of an admission, prejudice is one of the two factors central to the analysis, and a court's failure to consider [] both [prongs of Rule 36(b)] is an abuse of discretion."). *DeLong*'s reliance on Texas state court cases to define "good cause" under Rule 36 underscores that Arizona's rule trumps and defeats the gloss the

superior court and dissent would import more fully into the rule. *See id.* at 168 ¶ 15. These interpretive differences matter, which is why we exercise our discretionary jurisdiction – to help clarify Rule 36(b) for its many users.

### 3. Special Action Rule 12 Guides Us and Supports Exercising Jurisdiction.

**¶31** The dissent takes no issue with whether Special Action Rule 12(b)(4) applies, which reinforces the correctness of our exercise of jurisdiction here. *See generally* Dissent.

**¶32** The dissent critiques the Arizona Supreme Court's recently enacted Special Action Rule 12(b)(7), complaining it is hard to apply. Dissent, Paragraph 96. Not so. Our courts have long looked at judicial efficiency in exercising their discretionary special action jurisdiction. *See, e.g., Grand v. Nacchio*, 214 Ariz. 9, 18 ¶ 24 (App. 2006); *Harris Trust Bank of Ariz. v. Superior Court*, 188 Ariz. 159, 162 (App. 1996). A dissent that correctly points to the statutes creating the old writs as the genesis of our discretionary jurisdiction should recognize that whether a remedy is equally plain, speedy, or adequate in A.R.S. § 12-2001 imports some of the same efficiency considerations the dissent objects to in Rule 12(b)(7). And a dissent that looks to these authorizing statutes should pause on the legislature's reminder in A.R.S. § 12-2001 that whether a party lacks a plain, speedy, and adequate remedy is "in the judgment of the court." A.R.S. § 12-2001. Fashioning the writs, the legislature didn't give us bright lines. Instead, it forged a broad standard concerned in part with the speed of a litigant's remedy, urging us to exercise our judgment, as we have today.

**¶33** Consistent with those statutes, the Arizona Supreme Court directed this Court that "[i]n deciding whether to accept jurisdiction" of special actions "the court should consider" the factors in Special Action Rule 12. Ariz. R.P. Spec. Act. 12(b). Our decision today applies them, while the dissent declares independence from them, writing, "[w]hile the factors in Rule 12 can guide our discretion in some cases, they are not the end all be all." Dissent, Paragraph 77. Applying the factors, we properly respect our judicial role and do only that which the legislature and the Arizona Supreme Court have directed us to do. *Compare* Dissent, Paragraph 77.

**¶34** Yet even if one casts aside Special Action Rule 12(b) and (c), which we aren't allowed to do, and asks *only* in light of A.R.S. § 12-2001 "whether remedy by appeal is equally plain, speedy, and adequate," the answer is clear. The superior court hasn't yet considered the prejudice element of Rule 36(b), as that rule's text commands – and there isn't

prejudice here from accepting a response to a request for admission a few days late (nor does the dissent claim there is). *See* Dissent, Paragraphs 81 - 85. Thus, if we don't exercise jurisdiction, Nunez will have to go through trial now, then an appeal, and then a second trial on remand. Optimistically assuming a trial four months after remand and one further year to appellate resolution, Nunez is likely to get a final resolution on the merits in the superior court in mid-2028. That is *so* not equally plain, speedy, and adequate. "Thus, the interests of judicial efficiency support our exercise of special action jurisdiction." *Grand*, 214 Ariz. at 18 ¶ 24; *see also Harris Trust Bank*, 188 Ariz. at 162 (concluding that "acceptance of special action jurisdiction is in the interests of judicial economy" where "allowing th[e] matter to proceed to trial without addressing the error presented by th[e] petition would ultimately result in reversal"). Our exercise of jurisdiction is consistent with the statutes authorizing the old writs and the rules the Arizona Supreme Court enacted to guide us in exercising that discretionary jurisdiction.

## II. The Superior Court Erred By Denying Nunez's Motion to Withdraw Admissions.

**¶35** Rule 36 forces a responding party to admit whether facts are or aren't true. Once a party serves a request for admission, the responding party must answer or object within 30 days, or the request is admitted. Ariz. R. Civ. P. 36(a)(4). But that's not the end of the story. Even parties failing to respond within 30 days may withdraw the resulting admission with the court's permission. Rule 36(b) gives the superior court two criteria to apply when deciding whether to let a party withdraw admissions. They are [1] "if it would promote the presentation of the merits of the action and [2] if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Ariz. R. Civ. P. 36(b).

**¶36** We review the superior court's decision whether to permit withdrawal or amendment of responses to requests for admission for abuse of discretion. *DeLong*, 233 Ariz. at 166-67 ¶ 11. The superior court abuses its discretion when its ruling is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Quigley v. City of Tucson*, 132 Ariz. 35, 37 (App. 1982). The superior court also abuses its discretion when "the record fails to provide substantial support for [its] decision." *Files v. Bernal*, 200 Ariz. 64, 65 ¶ 2 (App. 2001). "Although the court has discretion to permit withdrawal or amendment of an admission, prejudice is one of the two factors central to the analysis, and a court's failure to consider them both is an abuse of discretion." *DeLong*, 233 Ariz. at 167 ¶ 11.

¶37        Nunez argues the superior court failed to correctly apply both of the criteria in Rule 36(b).  We agree.

### A.    The Superior Court Erred, Because the Deemed Admissions Would Decide This Case, So Withdrawing Them Would Promote the Presentation of the Case's Merits.

¶38        The superior court twice denied Nunez's motion to withdraw the admissions without applying the test in the plain language of Rule 36(b).  On May 27, it did so in open court by finding "I don't have good cause."  As both the transcript and the court's later minute entry reflect, the court did so without considering whether withdrawing the admissions would prejudice Valente's defense of the action or promote presenting this case on its merits.   On July 10, the court denied the motion for reconsideration it invited Nunez to file, again omitting to consider whether withdrawing the admissions would prejudice Valente's defense or promote presenting this case on its merits.  This was error for two reasons.

¶39        *First*, we must interpret Rule 36(b) in a manner that gives effect to its plain language.  *See State v. Tillmon*, 222 Ariz. 452, 454 ¶ 8 (App. 2009) ("We interpret rules of procedure by their plain meaning."); *see also Harper v. Canyon Land Dev., LLC*, 219 Ariz. 535, 536 ¶ 4 (App. 2008) ("In construing rules, we give effect to the plain meaning unless the language is ambiguous or would create an absurd result.") (citations omitted).  Rule 36 merely required Nunez to show that withdrawing his deemed admissions can "promote the presentation of the merits of the action."  Ariz. R. Civ. P. 36(b).  Withdrawing admissions can promote consideration of the merits even where they are not case-dispositive.  By denying Nunez's motion for reconsideration because the admissions were "not case-dispositive," the superior court held Nunez to a higher standard than that in Rule 36(b).

¶40        *Second*, retracting the admissions would necessarily "promote the presentation of the merits of the action," Ariz. R. Civ. P. 36(b), because they would decide most or all of this case.  The admissions that Nunez promised to marry Valente and did not intend to do so would resolve Count I, Breach of Promise to Marry.  Because Valente complained of the same conduct in Counts II and III, Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress, these admissions would likely require judgment for Valente on either or both of those counts. These admissions would establish that Nunez tricked his way into joint title to the home, which would apparently give Valente an entitlement to judgment on Count IV, Unjust Enrichment.  All of this would establish Nunez had unclean hands, defeating his suit for the equitable remedy of

partition. *See MacRae v. MacRae*, 57 Ariz. 157, 161 (1941) ("It is a cardinal rule of equity that he who comes into a court of equity seeking equitable relief must come with clean hands."). The admissions that Nunez pressured Valente to add his name to her home's title while lying to her about marriage and pressuring her to buy her own engagement ring would buttress Valente's showing of inequitable conduct. This would further defeat any consideration of the merits of Nunez's claim for partition. *See id.* Even Valente agrees with this analysis. She argued in her motion to strike Nunez's complaint that "[g]iven these admissions, it is apparent that Mr. Nunez's lawsuit for partition of Ms. Nunez's [sic] residence is not well taken."

¶41 Nunez showed far more than he had to – withdrawing these admissions would not merely "promote the presentation of the merits of the action," as Rule 36(b) requires. He showed that "upholding the admissions would practically eliminate any presentation of the merits of the case." *DeLong*, 233 Ariz. at 167 ¶ 12 (quoting *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995)). This provides one ground to vacate the superior court's denial of Nunez's motion to withdraw his admissions, and to direct the superior court to perform the analysis Rule 36(b) requires.

### B. The Superior Court Erred By Declining to Consider Whether Valente Was Prejudiced By Nunez's Brief Delay in Responding to Her Requests for Admission.

¶42 A second reason we vacate the superior court's orders denying Nunez's motion to withdraw his admissions is that the superior court did not consider prejudice, as Rule 36(b)'s plain text requires. *See Tillmon*, 222 Ariz. at 454 ¶ 8. The court did not consider prejudice in its initial order denying Nunez's motion (or the argument in which it ruled from the bench). Nor did it consider prejudice in its order on his motion for reconsideration. This was error. *See DeLong*, 233 Ariz. at 167 ¶ 11 ("[P]rejudice is one of the two factors central to the analysis, and a court's failure to consider them both is an abuse of discretion."); *see also Conlon v. United States*, 474 F.3d 616, 625 (9th Cir. 2007) (same). Despite that, Valente argues in this court that she was prejudiced by Nunez's late responses, given the fact of his delay, and the fact of his late disclosures. Her argument fails for two reasons.

¶43 *First*, delay by itself is not prejudice. *DeLong*, 233 Ariz. at 167 ¶ 14 ("[A] missed deadline and months delay in responding to requests for admission, without more, does not satisfy the prejudice prong of Rule 36[b]."); *Raiser v. Utah Cnty.*, 409 F.3d 1243, 1247 (10th Cir. 2005) ("[M]ore

than a failure to meet deadlines is required to deny a party relief from an admission."). We found no authority indicating that the brief delay here was prejudicial. *See DeLong*, 233 Ariz. at 167 ¶ 14 (finding an eight-month delay insufficient to support a finding of prejudice); *Hadley*, 45 F.3d at 1349 (finding a party was not prejudiced by a more than one month delay, even though the delay led to missed discovery opportunities).

¶44        *Second*, Valente does not argue, as she must, prejudice from asserted reliance on the admissions. *See DeLong*, 233 Ariz. at 167 ¶ 13 (holding prejudice, in the Rule 36 context, relates to "the difficulty a party may face in proving its case, *e.g.*, caused by the unavailability of key witnesses, because of the sudden need to obtain evidence, with respect to the questions previously deemed admitted") (quoting *Hadley*, 45 F.3d at 1348) (cleaned up). Such reliance must be substantial to justify denial of a motion to withdraw. *See Hadley*, 45 F.3d at 1349 ("Cases finding prejudice to support a denial [of a motion to withdraw] generally show a much higher level of reliance on the admissions" than missed discovery opportunities.).

¶45        Worse, every instance of "prejudice" Valente asserts relates to events *preceding* rather than *following* the delayed response: (1) a phone message she was unable to leave on February 28, before the time for response started on these responses; (2) difficulty in framing her February 28 discovery based on nonprovision of a disclosure statement; and (3) attorneys' fees expended in preparing her own prior disclosure statement. None of this suggests Valente meaningfully relied on the deemed admissions. Indeed, rather than relying on the admissions during the few days Nunez was late, Valente's counsel suggested "the case is over, as far as we are concerned, until the judge orders otherwise." For all of these reasons, Valente cannot satisfy her burden to establish prejudice. *See Conlon*, 474 F.3d at 622 ("The party relying on the deemed admission has the burden of proving prejudice.").

### C.        The Superior Court Has Other Remedial Tools.

¶46        Though we grant Nunez the relief he requests, that is no endorsement of missing discovery deadlines. Timely compliance with Rule 26.1(a) is a linchpin of Arizona civil practice. Ariz. R. Civ. P. 37(h). Our decision does not foreclose the court on remand from exercising its power to manage discovery and disclosure by shifting fees spent on discovery and disclosure to achieve proportionality. *Id.* ("Timely and full compliance with Rules 26, 26.1, and 26.2 being essential to the discovery process, achieving proportionality, and trial preparation, the court may make any order . . . to achieve proportionality under Rule 26(b)(1), including without limitation

. . . allocating the costs, expenses, and attorney's fees of discovery or disclosure among the parties as justice requires.").

**CONCLUSION**

¶47        For all of these reasons, we accept jurisdiction and grant relief, vacating the court's orders denying Nunez's motion permitting admissions to be withdrawn, and directing the court on remand to apply Rule 36(b)'s factors in determining whether to let Nunez withdraw the admissions. In our discretion, we deny the parties' requests for attorneys' fees, and grant Nunez his taxable costs incurred in this special action subject to his compliance with ARCAP 21.

C A T L E T T, Judge, dissenting:

¶48        The Arizona Constitution gives the popularly elected branches power to set our jurisdiction. Ariz. Const. art. 6, § 9. But unmoored, special action jurisdiction can upset the people's choice about when we do and don't have authority to act. And make no mistake, special action jurisdiction has drawbacks—we lose the benefit of the trial court process (even if interesting issues vanish in the meantime) and impose extra costs on parties. As our supreme court explained, special action review "often frustrates the expeditious resolution of claims, unnecessarily increases both appellate court caseload and interference with trial judges, harasses litigants with prolonged and costly appeals, and provides piecemeal review." *See City of Phoenix v. Yarnell (Smith)*, 184 Ariz. 310, 315 (1995).

¶49        Only by adhering to text, history, and the separation of powers when accepting jurisdiction do we exercise proper restraint. All three require we accept jurisdiction only when two conditions are met. First, a petition must seek relief available under the writs of mandamus, certiorari, or prohibition. Second, there must be no plain, speedy, or adequate remedy by appeal.

¶50        Neither condition is met here. Ultimately, the superior court refused to allow Nunez to withdraw his admissions because he didn't show good cause for responding late. To vacate that decision, we'd have to assume the superior court ignored the law, and we'd have to reweigh evidence and ignore deference to the court's factual finding. The extraordinary writs have never authorized us to do either. Plus, Nunez argues we should accept jurisdiction because the trial court's refusal to

withdraw his admissions dooms his claims. The majority predicts that's true and says it's sufficient. I disagree. Even if Nunez is right, he has a speedy and adequate remedy—direct appeal. *See DeLong v. Merrill*, 233 Ariz. 163, 165-66 ¶¶ 6-8 (App. 2013). Neither condition for special action jurisdiction exists, so I would decline jurisdiction.

## I.

**¶51** Special action requirements aren't pesky roadblocks to deciding interesting issues. Instead, text, history, and the separation of powers require we heed those requirements in all circumstances.

## A.

**¶52** Text dictates we respect the writs' requirements. The special action rules list three circumstances when relief lies. *See* Ariz. R.P. Spec. Act. 4. First: a lower court didn't "exercise discretion that they have a duty to exercise; or failed to perform" a non-discretionary legal duty. Ariz. R.P. Spec. Act 4(a). Second: a lower court "proceeded, or threatened to proceed," without jurisdiction or authority. Ariz. R.P. Spec. Act. 4(b). And third: the lower court's decision "was arbitrary and capricious or an abuse of discretion[.]" Ariz. R.P. Spec. Act. 4(c).

**¶53** The Rules also say we accept jurisdiction only when a petitioner has no plain, speedy, and adequate remedy by appeal. Rule 2(b)(2) says we accept special action jurisdiction only when an "appeal is not equally plain, speedy, and adequate." Ariz. R.P. Spec. Act. 2(b)(2). Rule 12(a) explains, "In accepting or declining jurisdiction, the court is determining whether remedy by appeal is equally plain, speedy, and adequate." Ariz. R.P. Spec. Act. 12(a). And the factors in Rule 12 describe how courts "determine whether there is no 'plain, adequate and speedy remedy.'" Ariz. R.P. Spec. Act. 12 cmt. (2025). So text requires we decline special action jurisdiction when there's a plain, speedy, and adequate remedy by appeal. *See State v. Salazar-Mercado*, 234 Ariz. 590, 592 ¶ 4 (2014) ("If . . . plain and unambiguous, we apply [the text] as written without further analysis.").

## B.

**¶54** History also shapes the relief available in a special action and requires there be no plain, speedy, and adequate remedy by appeal.

### 1.

¶55      Three common law writs undergird special action jurisdiction: certiorari, mandamus, and prohibition. *See Bledsoe v. Goodfarb*, 170 Ariz. 256, 257 n.1 (1991) ("[R]elief formerly obtained by writs of prohibition, mandamus or certiorari is now obtained by 'special action.'"). Each is equitable. So they may issue only when there is no plain, speedy, or adequate remedy at law, including by appeal. *See City of Bisbee v. Ariz. Ins. Agency*, 14 Ariz. 313, 314 (1912) (equity "may not be invoked when the complainant has a plain, speedy, and adequate remedy at law.").

**a.**

¶56      Writs of certiorari predate statehood. In 1878, the territorial supreme court reversed the issuance of such a writ. In so doing, the court explained, "This writ issues only when excess of jurisdiction has occurred, and then only when there is no appeal." *Reilly v. Tyng*, 1 Ariz. 510, 511 (1878). The statute at issue stated, "The writ shall be granted in all cases when an inferior tribunal, board, or officer, exercising judicial functions, has exceeded the jurisdiction of such tribunal, board, or officer[.]" Comp. Laws. Ariz. Territory § 458 (1877). It also said the writ applied only when "there is no appeal, nor, *in the judgment of the court*, any plain, speedy, and adequate remedy." Comp. Laws. Ariz. Territory § 458 (emphasis added).

¶57      The legislature included certiorari in the first civil code. That statute, like its territorial predecessor, provided that "the writ shall be granted in all cases when an inferior tribunal, board or officer, exercising judicial functions, has exceeded the jurisdiction of such tribunal, board or officer[.]" Ariz. Civ. Code § 1495 (1913). And the writ was available only when "there is no appeal, nor, *in the judgment of the court*, any plain, speedy and adequate remedy." Ariz. Civ. Code § 1495 (emphasis added).

¶58      The statute authorizing certiorari remains untouched and says the writ shall not issue unless "there is no appeal, nor, *in the judgment of the court*, a plain, speedy and adequate remedy." A.R.S. § 12-2001 (emphasis added). And two years before creating the special action rules in 1970, our supreme court explained that "certiorari may be employed when an inferior tribunal has exceeded its jurisdiction and there is no appeal, nor a plain, speedy and adequate remedy available." *Genda v. Super. Ct., Pima County*, 103 Ariz. 240, 242 (1968).

**b.**

¶59      Writs of mandamus also predate statehood. In 1875, the territorial supreme court explained mandamus could issue "to control the action of any inferior court, board, or officer" when "the party injured has

no other speedy and adequate remedy[.]" *Woffenden v. Bd. of Supervisors of Pima Cnty.*, 1 Ariz. 237, 238 (1875).

¶60　　　The legislature authorized mandamus in the first civil code. That statute provided that "mandamus may be issued by the supreme or superior court to any inferior tribunal . . . to compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station[.]"　Ariz. Civ. Code § 1553 (1913).　But the next section said mandamus only occurred when "there is not a plain, speedy and adequate remedy in the ordinary course of law."　Ariz. Civ. Code § 1554 (1913).

¶61　　　That statute still sets the conditions for mandamus and says it applies only when there is no "plain, adequate and speedy remedy at law[.]"　A.R.S. § 12-2021.　And four years before adopting the special action rules, the supreme court emphasized that "mandamus will not issue where there is a plain, speedy and adequate remedy in the ordinary course of law[.]"　*Morrison v. Stanford*, 100 Ariz. 211, 213 (1966).

**c.**

¶62　　　The legislature never codified the writ of prohibition.　But that writ existed at common law, and the legislature never abolished it, so it's valid.　*See* A.R.S. § 1-201.　"[P]rohibition is the proper remedy to prevent [judicial or quasi-judicial] action when it is without jurisdiction, and there is no other plain, speedy, and adequate remedy available."　*Johnson v. Betts*, 21 Ariz. 365, 371 (1920).

¶63　　　The first published Arizona opinion discussing prohibition arrived in 1894 and with it the principle that it's unavailable when there is an adequate remedy through appeal.　In *Walker v. District Court of Pinal County*, the territorial supreme court said this:

> [T]he petitioner, we are convinced, has an adequate remedy by appeal or error from the action of the district court; and it is everywhere agreed that in such case the writ will not issue. Any other course, ordinarily, would bring all civil cases where jurisdictional questions are involved to this court by the writ, instead of appeal or error; a course not authorized by our practice.

4 Ariz. 249, 251 (1894).

¶64　　　After statehood, the supreme court explained that "prohibition may not be resorted to if a party has a plain, speedy, and adequate remedy by appeal."　*Miller v. Super. Ct. of Mohave Cnty.*, 21 Ariz.

61, 64 (1919). And the court later confirmed that prohibition is unavailable when there is an adequate remedy by appeal. *See, e.g.*, *Town of Tempe v. Super. Ct.*, 33 Ariz. 166, 170 (1928) (rejecting prohibition when "[t]he only reason suggested why the remedy by appeal is not adequate is that the petitioner would be put to considerable expense and annoyance in trying the counterclaim on its merits"); *Taylor v. Stanford*, 100 Ariz. 346, 350 (1966) (granting prohibition because "there is no other plain, speedy and adequate remedy and we can in our discretion issue the writ").

**2.**

¶65         In 1970, the supreme court adopted the Rules of Procedure for Special Actions; those Rules remained unchanged through 2024. And they incorporated traditional limits on extraordinary writs.

¶66         Rule 1 said, "nothing in these rules shall be construed as enlarging the scope of the relief traditionally granted under the writs of certiorari, mandamus, and prohibition." Ariz. R.P. Spec. Act. 1(a) (2024). To ensure that was true, Rule 1 provided that "[e]xcept as authorized by statute, the special action shall not be available where there is an equally plain, speedy, and adequate remedy by appeal[.]" Ariz. R.P. Spec. Act. 1(a) (2024). The comments to Rule 1 emphasized traditional limits on equitable relief. Comment (a) explained that "[t]he writs are constitutional in Arizona, Ariz. Const. art. 6, §§ 5, 18, as amended, and the Rule does not alter their substance but merely establishes the procedure for obtaining their remedies." Ariz. R.P. Spec. Act. 1 cmt. (2024).

¶67         Rule 2 limited special action relief to "[a]ny person who previously could institute an application for a writ of mandamus, prohibition, or certiorari[.]" Ariz. R.P. Spec. Act. 2 (2024). The comments to Rule 3 explained that Rule 3(a) "sets forth the traditional functions of the writ of mandamus" and Rules 3(b) and (c) "inherit the tradition of the writs of certiorari and prohibition." Ariz. R.P. Spec. Act. 3 cmt. (2024). The comment also explained that Rule 3(c) "is a codification of existing extraordinary writ law in Arizona," and therefore "these words of art carry with them their traditional interpretations." *Id.* The comments to Rule 3 again emphasized that "[t]his section is of course subject to the basic limitation that there is no review by special action when there is an equally plain, speedy, or adequate remedy by appeal." *Id.* Finally, comment (e) to Rule 7 clarified that "we now refer to petitions for extraordinary relief as special actions. However, the change in terminology does not signal any relaxation of the standards heretofore used by the courts [regarding] special writs." Ariz. R.P. Spec. Act. 7 cmt. (e) (2024).

## C.

¶68     Separation of powers also demands care before accepting special action jurisdiction.

## 1.

¶69     The Arizona Constitution governs the judicial department's jurisdiction and authority. *See State ex rel. Brnovich v. City of Tucson*, 242 Ariz. 588, 594–95 ¶ 23 (2017) ("Our state constitution identifies the various components of this Court's subject matter jurisdiction."); *see also* A.R.S. § 12-102(A) ("The supreme court shall discharge the duties imposed and exercise the jurisdiction conferred by the constitution and by law."). Despite temptation, no court can expand the Constitution beyond its terms.

¶70     Our Constitution doesn't mention appellate special actions. It instead grants the supreme and superior courts jurisdiction and authority to issue writs. The supreme court has "[o]riginal jurisdiction of habeas corpus, and quo warranto, mandamus, injunction and other extraordinary writs to state officers." Ariz. Const. art. 6, § 5(1). It also has "[p]ower to issue . . . writs of mandamus, review, prohibition, habeas corpus, certiorari, and all other writs necessary and proper to the complete exercise of its appellate and revisory jurisdiction." Ariz. Const. art. 6, § 5(4). And superior courts "may issue writs of mandamus, quo warranto, review, certiorari, prohibition, and writs of habeas corpus[.]" Ariz. Const. art. 6, § 18; *see also* A.R.S. § 12-123(A) ("The superior court shall have original and concurrent jurisdiction as conferred by the constitution[.]").

¶71     In 1960, the people repealed Article 6, replacing it with the current version. By then, as discussed, there was well-developed caselaw and decades-old statutes defining "certiorari," "mandamus," and "prohibition." In 1960, all understood those terms to describe distinct forms of equitable relief, none of which were available when there was an adequate remedy by appeal. *See Matthews v. Indus. Comm'n*, 254 Ariz. 157, 163 ¶ 29 (2022) ("When construing a constitutional provision, we seek to give terms the original public meaning understood by those who used and approved them."). By reusing those terms, the electorate baked their original meaning into the proverbial pie—namely, the Arizona Constitution. *See Sekhar v. United States*, 570 U.S. 729, 733 (2013) ("[A]s Justice Frankfurter colorfully put it, 'if a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it.'"); *see also Silver v. Pueblo Del Sol Water Co.*, 244 Ariz. 553, 559-60 ¶ 22 (2018) (applying the prior-construction canon).

¶72 As to this court, the Constitution says, "The jurisdiction, powers, [and] duties . . . of any intermediate appellate court shall be as provided by law." Ariz. Const. art. 6, § 9. For two decades after the Rules of Procedure for Special Actions, the legislature didn't extend special action jurisdiction to this court, creating confusion. *See State ex rel. Neely v. Rodriguez*, 165 Ariz. 74, 77 (1990) (the court of appeals "may entertain special action jurisdiction only in matters that it might properly consider in an appeal"). But in 1990, the legislature clarified in A.R.S. § 12-120.21(A)(4) that we have "[j]urisdiction to hear and determine petitions for special actions brought pursuant to the rules of procedure for special actions, without regard to [our] appellate jurisdiction." *See* 1990 Ariz. Sess. Laws ch. 395, § 2 (2d Reg. Sess.) (H.B. 2294). This lets us issue extraordinary writs, but only when the supreme and superior courts may do so.

¶73 At bottom, Article 6 limits our authority to grant certiorari, mandamus, and prohibition—those writs' historical scope limits our authority to issue them. And that authority exists only when there is no plain, speedy, and adequate remedy by appeal. When we dilute the writs' requirements, we disrespect limits the people placed on our authority. Only by respecting traditional limits on issuing the writs do we heed the people's limitations.

### 2.

¶74 But when we ignore those limits, we disrespect the people's authority over our jurisdiction. As explained, we have jurisdiction only when legislatively granted. *See* Ariz. Const. art. 6, § 9. The legislature detailed when we have jurisdiction and when we don't, including when we have jurisdiction over orders issued before final judgment. *See, e.g.*, A.R.S. § 12-2101. For example, we have appellate jurisdiction over orders "[g]ranting or dissolving an injunction or refusing to grant or dissolve an injunction." A.R.S. § 12-2101(A)(5)(b). And we have jurisdiction over interlocutory judgments involving a partition (what Nunez seeks here), an accounting, or the right to redeem property from a mortgage or lien. *See* A.R.S. § 12-2101(A)(6)–(8).

¶75 Yes, the legislature granted us jurisdiction over petitions brought under the special action rules. A.R.S. § 12-120.21(A)(4). But when doing so, it incorporated traditional limits on the extraordinary writs, which are reflected in those rules. If we instead use those rules to correct every interlocutory order with which we disagree, we render superfluous the legislature's choice permitting us to exercise appellate jurisdiction in limited circumstances. *See Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019); *see also Shea v. Maricopa County*, 255 Ariz. 116, 124 ¶ 37 (2023) (Bolick,

J., dissenting) ("[I]t would be highly anomalous to allow a special action to substitute for an appeal that is prescribed by law."). We must respect the legislature's choice about our appellate jurisdiction by not using special actions to nullify that choice, regardless of how interesting, important, or novel the issue raised might be.

¶76        The legislature also prohibited courts from using procedural rules to "[a]bridge, enlarge or modify substantive rights of a litigant" or "[a]bridge, enlarge or modify statutory, contractual or common law real property rights or questions of substantive law." A.R.S. § 12-109(B)(1)–(2). By disregarding traditional limits on the extraordinary writs, we necessarily modify the substantive right to appeal (why appeal when you can special action?). *See* A.R.S. §§ 12-2001, 12-2021; *Wallace v. Smith*, 255 Ariz. 377, 381 ¶ 10 (2023) ("[T]he right to appeal is quintessentially substantive[.]").

### D.

¶77        So text, history, and the separation of powers shape our special action jurisdiction. While the factors in Rule 12 can guide our discretion in some cases, they are not the end all be all. As Rules 2 and 12 say, the primary questions are (1) whether the petitioner seeks relief available under one of the extraordinary writs, and (2) whether the petitioner should have to wait for a direct appeal to argue the trial court erred (i.e., the petitioner lacks a plain, speedy, and adequate remedy by appeal). *See* Ariz. R.P. Spec. Act. 2(b)(2), 12(a); *Arizonans for Second Chances, Rehab., and Pub. Safety v. Hobbs*, 249 Ariz. 396, 427 ¶ 122 (2020) (Bolick, J., dissenting) ("[A]s a threshold requirement, Petitioners must demonstrate that the action presents a question appropriate for special action review."). Only by respecting those requirements do we properly balance rule based special action review with legislatively granted appellate review.

### II.

¶78        The majority disregards traditional limits on our jurisdiction. Nunez doesn't argue the superior court refused to exercise mandatory discretion or failed to perform a legal duty. Ariz. R.P. Spec. Act. 4(a). And he doesn't argue the court lacked jurisdiction or authority. Ariz. R.P. Spec. Act. 4(b). He argues primarily that the court abused its discretion in making a factual finding. Ariz. R.P. Spec. Act. 4(c). I would decline jurisdiction because the petition raises primarily factual questions, and Nunez has a plain, speedy, and adequate remedy by appeal.

**A.**

**¶79**        The majority accepts jurisdiction, in part, because it thinks the petition raises a legal issue. I disagree. Jurisdiction shouldn't arise based on what legal issues we can imagine a petition could've raised. It should arise based on issues a petition actually raises. Nunez hasn't asked us to interpret Arizona Rule of Civil Procedure ("Rule") 36. Instead, he argues only that the superior court abused its discretion in *applying* Rule 36 to the facts here. The majority insists that refusing to allow Nunez to withdraw his admissions raises a pure legal issue. That's incorrect. At best, whether the superior court should've allowed Nunez to withdraw his admissions (based on his admittedly late answers to Valente's discovery requests) is a mixed question of law and fact—and that issue is mostly factual. We know this because the majority vacates the superior court's decision. We don't vacate a superior court's legal conclusion when we disagree with it—we reverse the superior court when it commits legal error. The majority accepts jurisdiction and vacates the order to allow the superior court to retry the factual analysis it already conducted, thereby allowing the superior court to again refuse to allow Nunez to withdraw his admissions so long as it expressly addresses the factors in Rule 36.

**¶80**        Recognizing that the actual dispute presented is mostly factual, the majority invents a legal question neither party asks us to resolve. The majority claims special action jurisdiction is appropriate because the superior court, applying *DeLong v. Merrill*, 233 Ariz. 163 (App. 2013), considered whether Nunez had good cause for responding late. The majority then characterizes *DeLong*'s good cause discussion as "judicial gloss" on the text in Rule 36. It then rejects the idea that the superior court may consider good cause. So in its eagerness to accept jurisdiction, the majority needlessly creates conflict with Division Two's opinion in *DeLong* (without expressly disavowing it) and risks confusing trial courts about how to apply Rule 36(b).

**¶81**        That Rule provides, "[T]he court *may* permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Ariz. R. Civ. P. 36(b) (emphasis added). By using the term "may," the Rule permits the court to allow withdrawal; but the court isn't required to do so. As we explained in *DeLong*, "[e]ven when both prerequisites are met, [Rule 36] is permissive, not mandatory, in that the court may allow withdrawal or amendment of an admission, but [it] is not required to do so." 233 Ariz. at

167–68 ¶ 15 (cleaned up). "Trial courts may consider other factors, including whether there was good cause for the delay and the merits of the moving party's case." *Id.* at 168 ¶ 15. Good cause exists when responding late to requests for admission "was an accident or mistake, not intentional or the result of conscious indifference." *Id.* (cleaned up).

¶82 In deciding whether to accept jurisdiction, I take *DeLong* as given, because neither party asks us to revisit it. Under the right circumstances (i.e., not when deciding whether to accept jurisdiction), I might agree to re-calibrate *DeLong*. But doing so is not as easy as simply calling that opinion's good cause discussion "judicial gloss." After all, Rule 36 expressly gives trial courts wide discretion to withdraw deemed admissions—thus the phrase "may permit withdrawal." *See* Ariz. R. Civ. P. 36(b). I would require the parties to raise and brief an issue, rather than manufacturing it to shoehorn special action jurisdiction. Because Nunez doesn't ask us to reinterpret Rule 36(b), I don't consider the majority's choice to do so when deciding whether to accept special action jurisdiction. Taking *DeLong* and Nunez's petition at face value, the issues raised are mainly factual. *Compare Sierra Tucson, Inc. v. Bergin*, 239 Ariz. 507, 509 ¶ 6 (App. 2016) (declining jurisdiction over issues requiring resolution of factual disputes), *with Piner v. Super. Ct.*, 192 Ariz. 182, 185 ¶ 10 (App. 1998) (accepting jurisdiction because "[t]he facts [were] not contested, and the legal issue [could] properly be decided on the present record").

¶83 The primary question the petition actually presents and on which Nunez must prevail is this: did the superior court abuse its discretion by finding he lacked "good cause" for responding late?

¶84 The parties acknowledge that the court's "good cause" finding stands in Nunez's way. The very first argument Nunez made when moving to withdraw his admissions was that "[g]ood cause exists as to why Plaintiff was late in responding to requests for admission." Similarly, Nunez's petition asks us to review "[t]he detailed, sworn declarations from both undersigned counsel and Mr. Nunez," and unlike the superior court, find they "demonstrate that the 10-day delay was the result of excusable neglect, not willful disregard." Nunez asks us to find excusable neglect because his "counsel, a solo practitioner, was consumed by preparations for a complex three-day arbitration at the exact time discovery was served, an obligation compounded by the personal demands and sleepless nights of caring for his infant child and simultaneous communication difficulties with his client." Valente disputes Nunez's factual position. She maintains "[t]he trial court properly refused to find excusable neglect for the months of tardy disclosure, discovery, discovery responses, and lack of communication with counsel, and failure to seek or obtain extensions."

¶85　　　　The superior court found the evidence didn't show good cause. That finding is fact bound, so we owe it deference. *See Quigley v. Tucson City Ct.*, 132 Ariz. 35, 37 (App. 1982) (an abuse of discretion occurs when the ruling is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons."). And even if I were inclined to disagree with the court's finding on its merits, that's beside the point when deciding whether to accept jurisdiction. What matters is that none of the extraordinary writs authorize an appellate court to reweigh evidence and ignore deference to arrive at a different discretionary discovery decision than the superior court—what Nunez's petition asks us to do. *See Jolly v. Super. Ct.*, 112 Ariz. 186, 188 (1975) (stating that special action relief over discovery issues "shall be exercised only in 'rare' cases, as a matter of sound discretion according to the nature and circumstances of the case").

¶86　　　　The majority also accepts jurisdiction because the superior court didn't say in writing that it considered the two factors listed in Rule 36(b)—it calls that legal error. Whether not resolving those factors in writing is error strikes me as a merits question. But let's assume that question somehow bears on special action jurisdiction. Rule 36(b) doesn't require express findings, and I wouldn't impose such a requirement just to accept jurisdiction. *Cf. Hart v. Hart*, 220 Ariz. 183, 187 ¶ 17 (App. 2009) (we will not "judicially impose a requirement the legislature has intentionally chosen not to require"); *see also State v. Brearcliffe*, 254 Ariz. 579, 584 ¶¶ 18-19 (2023). The parties disputed in the superior court—both in their papers and during oral argument—whether Nunez satisfied the factors in Rule 36(b). Without the record showing otherwise, we presume the superior court knew the law and applied it, including the factors in Rule 36(b). *See State v. Trostle*, 191 Ariz. 4, 22 (1997).

¶87　　　　Nothing in the record supports that the superior court disregarded those factors. Which is more likely? The court brushed aside the factors in Rule 36(b), which the parties argued, and only considered good cause. Or the court considered the factors listed and argued but ultimately declined Nunez's motion by exercising discretion to consider other factors and by finding a lack of good cause. I'd give the superior court the benefit of the doubt and assume it did the latter. To show the futility of accepting jurisdiction over the factual issue here, all the superior court needs to do on remand is say it considered the two factors in Rule 36(b), but that it denies Nunez's motion because he has not shown good cause for his late responses to Valente's discovery requests. We should therefore decline jurisdiction.

**B.**

¶88            I'm not suggesting we can't accept jurisdiction when a petition argues only that the superior court erred in applying established facts to law.  And despite the majority's suggestion otherwise, I've been consistent in this regard.

¶89            The majority discusses two opinions I authored for the court but neither proves its point.  Though one could debate whether those opinions decided a pure legal issue or a mixed question of law and fact, one can't deny they both had that "something special" warranting special action jurisdiction.  In *Club West Conservancy v. Shea Homes Limited Partnership*, we accepted jurisdiction because "[i]f Club West is correct that the court is acting without jurisdiction, Club West's only remedy to immediately stop it from doing so is a special action."  ___ Ariz. ___, 581 P.3d 228, 230 ¶ 11 (App. 2025).  And in *White v. State*, the petitioner had no appellate remedy because "[w]hether he may appear at sentencing by virtual means will become moot if he travels to Arizona to be sentenced."  259 Ariz. 310, 312 ¶ 7 (App. 2025).

¶90            Other opinions I authored are consistent.  In *Desert Mountain Energy Corporation v. City of Flagstaff*, the "petition [was] the rare one where jurisdiction [was] appropriate because the benefit lost [was] avoiding litigation, which cannot be recovered by awaiting an appeal."  259 Ariz. 346, 350 ¶ 15 (App. 2025).  In *Phillip G. v. Korbin-Steiner*, the petitioner challenged the juvenile court's jurisdiction and "temporary emergency orders," which "are not final or appealable."  256 Ariz. 573, 576 ¶ 14 (App. 2023).  In *McGlothlin v. Astrowsky*, special action jurisdiction was appropriate because "in addition to challenging the superior court's treatment of the privilege, the petition also questions the propriety of the superior court's *in camera* review."  255 Ariz. 449, 455 ¶ 13 (App. 2023); *see also* Ariz. R.P. Spec. Act. 12(b)(2) (special action jurisdiction may be appropriate when the court must resolve "legal or evidentiary privileges").  And in *Kelly v. Blanchard*, special action jurisdiction was justified because the superior court's order "potentially implicate[d] non-parties' confidentiality and privilege interests, [and] once production occurs, it cannot be undone."  255 Ariz. 197, 200 ¶ 9 (App. 2023).

¶91            I'm not timid about accepting jurisdiction—even when a petition raises mixed questions of law and (undisputed) fact.  But what I won't do is accept jurisdiction when a petition requires us to assume the superior court ignored the law and asks us to reweigh evidence and ignore deference to set aside a trial court's discretionary discovery decision.

## C.

¶92        Nunez also has a plain, speedy, and adequate remedy by appeal, so we shouldn't let him "jump the line."

¶93        Nunez doesn't challenge the superior court's jurisdiction, nor does he claim his arguments will become moot if we decline jurisdiction. He doesn't challenge temporary orders or a privilege determination. He doesn't assert he'll lose the benefit of avoiding litigation. And he has an appellate remedy—a direct appeal—if the court uses his admissions to doom his case. *See* A.R.S. § 12-2101(A)(1).

¶94        I'm not confident we can predict how Nunez's admissions will impact this litigation. Nunez frets they spell doom. But the superior court didn't see it that way—it concluded his admissions are "not case dispositive." In his amended complaint, Nunez brought a single claim against Valente to partition real property (which is subject to an interlocutory appeal under § 12-2101(A)(7)). Valente brought nine counterclaims against Nunez: (1) breach of promise to marry; (2) intentional infliction of emotional distress, (3) negligent infliction of emotional distress, (4) unjust enrichment, (5) negligence, (6) negligent misrepresentation, (7) declaratory relief, (8) quiet title, and (9) constructive trust. Nunez responded with nine affirmative defenses to those nine counterclaims. Valente hasn't moved for summary judgment on Nunez's partition claim; she moved for summary judgment on only one of her nine counterclaims— for breach of promise to marry (it's not clear that's a viable claim in Arizona). And, even for that targeted request, we don't have the trial court's ruling. So we lack sufficient information about what impact the admissions will have on this multi-claim, multi-defense litigation.

¶95        But what if the superior court's prediction is wrong and Nunez's admissions are case dispositive? If so, he has a speedy and adequate remedy—appealing the final judgment. *See* Ariz. R.P. Spec. Act. 2(b)(2); A.R.S. § 12-2101(A)(1). After all, that's how we decided *DeLong*— after an appeal from a final judgment. *See* 233 Ariz. at 165–66 ¶¶ 6–8.

¶96        It's also unclear whether accepting special action jurisdiction will promote the efficient management of this case. The way the majority applies that factor, it's hard to see how it won't always apply. To be candid though, I struggle applying the "efficient management" factor. *See* Ariz. R.P. Spec. Act. 12(b)(7). Every petitioner believes the trial court erred. And when a petitioner is correct about that, it will always be speedier and more efficient to correct the error then and there. But it can't be that special action jurisdiction lies whenever we think a trial court errs. Maybe the "efficient

management" factor is a "we know it when we see it" situation, but that's unfair to litigants who deserve predictability about the prospect of us accepting jurisdiction.

¶97        Fortunately, I needn't resolve my struggle here and now. The "efficient management" factor alone should rarely (if ever) merit special action jurisdiction. *See Caruso v. Super. Ct.*, 100 Ariz. 167, 171 (1966) ("Of course, there is expense and delay in being put to a trial and then an appeal. But these facts alone will not justify issuing the writ."); *Neary v. Frantz*, 141 Ariz. 171, 177 (App. 1984) (finding special action relief was unwarranted because a "remedy does not become inadequate merely because more time would transpire"). And that factor is insufficient here, when it's unclear what downstream impact the superior court's decision will have, and it's clear that if things go awry for Nunez, he can appeal.

¶98        I respectfully dissent.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:             JR